In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2441

United States of America,

Plaintiff-Appellee,

v.

Michael A. Peters, a/k/a Tony Boots,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-CR-169--Rudolph T. Randa, Judge.

Argued September 24, 2001--Decided January 22, 2002

   Before Posner, Ripple, and Kanne, Circuit
Judges.

   Kanne, Circuit Judge.  A jury found
Michael A. Peters ("Peters"), a/k/a Tony
Boots, guilty of one count of knowingly
engaging in a sexual act with Barbara
House at a time when Peters knew that
Barbara was physically incapable of
declining participation in the sexual act
in violation of 18 U.S.C. sec.sec.
2242(2)(B) and 1153. Peters filed a
motion for judgment of acquittal or in
the alternative for a new trial,
challenging the sufficiency of the
evidence presented against him. On May
26, 2000, the district court denied
Peters' post-trial motions and imposed a
sentence of 135-months imprisonment,
followed by three years of supervised
release. Peters filed a timely notice of
appeal. On appeal, Peters argues that the
district court erred in denying his
motion for judgment of acquittal because
the government failed to sufficiently
prove that Barbara was physically
incapable of declining participation in
the sexual act with Peters and because
the government failed to sufficiently
prove that Peters knew Barbara was
physically incapable of declining
participation in the sexual act. Further,
Peters contends that his conviction
should be reversed because the government
improperly commented on his failure to

testify during its closing argument and therefore impinged upon his Fifth Amendment right to remain silent. We agree with Peters' sufficiency of the evidence challenge. Thus, we reverse and remand with instructions to grant Peters' motion for judgment of acquittal.

## I.  History

Both Peters (age 36) and Barbara (age 21) are enrolled members of the Menominee Indian Tribe. The events relevant to this appeal occurred on the Menominee Indian Reservation in Wisconsin. Peters was married to Diane House, Barbara's older sister, but the two were separated at the time the events relevant to this appeal transpired. Peters and his three children were living at 102 School View, in the City of Keshena on the Menominee Indian Reservation. The residence at 102 School View belonged to Jonnie House, Barbara and Diane's other sister. Jonnie was allowing Peters and his three children to live at the residence during the summer of 1999.

At trial, Barbara testified that on the evening of August 11, 1999, she, Peters, her brother Keith House (age 19), and two of her cousins (ages 13 and 14) had a party at 102 School View. Barbara testified that over the course of three to four hours, the group played cards, and that she consumed about twelve beers. Further, Barbara explained that later in the evening her cousins were lying on the living room floor and that Keith was lying on the couch in the living room when she decided to lie down on the living room floor. Barbara stated that she did not know where Peters was because she "passed out right away" on the living room floor. Barbara further testified that the next thing she remembers is her sister attempting to put some clothes on her. She stated that she was in the rear bedroom, but that she did not remember how she got there. She testified that she was wearing only a t-shirt and bra and that she did not remember taking off her pants. She said that she felt sick when she woke up and that she vomited in a bucket about three times. Barbara then stated that she did not remember having sex with Peters, that she does not remember consenting to have sex with Peters, and that she would never have consented to having sex with Peters. On

cross-examination, Barbara testified that she drinks until she passes out about three times a month. She admitted that when she drinks, sometimes she remembers what she did the night before, and sometimes she does not.

Keith was the only other person present at the party on August 11, 1999, who also testified at trial. Keith testified that Peters flirted with Barbara during the evening and that Barbara did not like Peters' advances. Keith stated that he fell asleep on the couch in the living room at about 10:30 p.m. and at that time both Barbara and Peters were still awake. Keith also testified that he remembers Peters asking Barbara, while she was passed out on the living room floor, to go to the back bedroom at about 11:00 p.m./* He further stated that the next thing he remembers is waking up and seeing police officers standing in the living room.

Jonnie testified that around midnight on August 11, she picked up her mother, Donna House, from a casino. Jonnie was accompanied by her boyfriend Osborn Crowe. According to Jonnie, Donna planned to drop Jonnie and Crowe off at 102 School View. Jonnie explained that she, Donna, Crowe, and her Aunt entered the residence at 102 School View at about 12:30 a.m. Jonnie stated that she believed that a party had taken place and that there were many beer cans around the house. She testified that she saw Keith, her two cousins, and Peters' children, but that she did not immediately see Barbara. Jonnie further testified that the door to the rear bedroom was locked. After jimmying the door open, Jonnie stated that she found Barbara lying on the bed with her young son sleeping next to her. Jonnie testified that she pulled the covers off of Barbara and discovered that Barbara was wearing only a t-shirt and that Barbara had nothing on below her waist. Jonnie attempted to wake Barbara, but did not initially succeed. Jonnie testified that she yelled for Donna and then that she started looking for Peters in the other bedrooms.

Donna testified that after Jonnie called her into the bedroom, Donna opened the closet door and found Peters in the closet wearing only his boxer shorts and a white t-shirt. Donna testified that she

then said, "That's it Tony. I am calling the Police." Donna admitted that she knew that on occasion Barbara would drink to the point of passing out. Donna also indicated that Barbara was able to function after a night of heavy drinking and would return home and into Donna's house or have someone bring her in. She then admitted that Barbara could not always recall what she did the previous night when she drank.

The first officer on the scene, Officer Bernard L. Smith, Jr., testified that when he arrived at 102 School View, Jonnie and Donna reported a possible sexual assault. Officer Smith explained that he was shown to the rear bedroom and that he unsuccessfully attempted to wake Barbara by shaking her foot and calling her name. Officer Smith then escorted Peters to a squad car in front of the house. Officer Smith stated that when Barbara did eventually wake up, he could tell that she was intoxicated because she was unbalanced and her eyes were glassy.

Sergeant Louis Moses was the second officer to arrive on the scene. Sergeant Moses testified that he also unsuccessfully attempted to wake Barbara by calling her name and shaking her shoulder. He explained that while he was calling the emergency medical technicians because he was concerned that Barbara might have alcohol poisoning, Barbara started to wake up. Sergeant Moses explained that he then told Donna to dress Barbara.

Barbara was taken to Shawano Hospital and was given a sexual assault examination. While the parties stipulated that there was a DNA match between samples taken from Peters and the semen recovered from the vaginal area of Barbara, the examination revealed no physical or medical evidence indicating that Barbara had been the victim of a non-consensual sexual assault. While there was redness on the cervical area, a nurse from the Shawano Medical Center testified that this type of redness could result from both non-consensual and consensual sexual intercourse.

Peters' defense at trial was that the sexual act was consensual. Several individuals testified to a purported previous relationship between Peters and

Barbara. None of the individuals who testified on Peters' behalf were present on the evening and early morning hours of August 11 and 12, 1999. Peters did not testify at trial.

Peters was charged with sexual abuse in violation of 18 U.S.C. sec. 2242(2)(B). Section 2242(2)(B) punishes whoever knowingly "engages in a sexual act with another person if that other person is physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." After all of the evidence was presented, the district court charged the jury:

[T]o sustain the charge of sexual abuse . . . the Government must prove the following propositions:

First, that Defendant knowingly caused Barbie House to engage in a sex act, to wit, penis to the vulva.

Second, that Barbie House, whom the Defendant engaged in a sexual act with, was physically incapable of declining participation or communicating unwillingness to engage in that sexual act.

Third, that the Defendant, Michael Peters, knew that Barbie House was physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act.

Fourth, that the alleged incident occurred within Indian country. That is, within the external boundaries of an Indian reservation.

And fifth, the Defendant and Barbie House were both members of an Indian tribe.

The jury found Peters guilty of the charge of sexual abuse.

Peters filed a motion for judgment of acquittal or for a new trial on the grounds that the government failed to establish that Barbara was incapable of declining participation in, or communicating unwillingness to engage in, the sexual act that occurred between herself and Peters. The district court denied Peters' post-trial motion and

imposed a sentence of 135-months imprisonment, followed by three years of supervised release. Peters filed a timely notice of appeal. On appeal, Peters argues that the district court erred in denying his motion for judgment of acquittal because the government failed to sufficiently prove that Barbara was physically incapable of declining participation in the sexual act with Peters and because the government failed to sufficiently prove that Peters knew that Barbara was physically incapable of declining participation in the sexual act. Further, Peters contends that his conviction should be reversed because the government improperly commented on his failure to testify during closing argument and therefore impinged upon his Fifth Amendment right to remain silent.

II. Analysis

A district court's denial of a motion for judgment of acquittal is reviewed de novo. See United States v. Jones, 222 F.3d 349, 351 (7th Cir. 2000). In weighing the sufficiency of the evidence on appeal, this Court will view the evidence in the light most favorable to the prosecution and will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); United States v. Montani, 204 F.3d 761, 769 (7th Cir. 2000). While we will "give deference to the jury's weighing of the evidence and its drawing of reasonable inferences," United States v. Draiman, 784 F.2d 248, 251 (7th Cir. 1986), we also recognize that "each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." See Piaskowski v. Bett, 256 F.3d 687, 693 (7th Cir. 2001) (citing United States v. An Article of Device, 731 F.2d 1253, 1262 (7th Cir. 1984)).

We believe that the government has failed to present sufficient evidence to establish that at the time the sexual act occurred, Barbara was incapable of declining participation in the sexual act. In sum, the evidence presented at trial revealed: (1) that on August 11, 1999, Barbara consumed a large quantity of alcohol; (2) that at around 10:30

p.m., Barbara and Peters were still awake; (3) that Barbara passed out on the living room floor; (4) that Peters asked Barbara to go to the rear bedroom at about 11:00 p.m.; (5) that sometime before 12:30 a.m., Barbara and Peters engaged in a sexual act; (6) that at about 12:30 a.m. on August 12, 1999, Jonnie and Donna found Barbara in the rear bedroom; and (7) that Barbara does not remember how she got to the rear bedroom or the sexual encounter with Peters.

While Barbara testified that she would never consent to having sex with Peters, this statement, in combination with the other evidence presented, is not sufficient to prove beyond a reasonable doubt that at the time the sexual act occurred, Barbara was physically incapable of declining participation in the sexual act. Cf. United States v. Barrett, 937 F.2d 1346, 1348 (8th Cir. 1991) (finding testimony that the victim was asleep when the defendant engaged in a sexual act with her sufficient to affirm conviction). There was no evidence presented as to when between 10:30 p.m. and 12:30 a.m. the sexual act occurred, or explaining how Barbara got to the rear bedroom. We do not know whether Barbara went to the rear bedroom at 10:45 p.m. or 12:15 a.m, nor do we know whether the sexual act occurred closer to 10:45 p.m. or to 12:15 a.m. Barbara was still walking around immediately prior to 10:30 p.m., but we know nothing about Barbara's physical state prior to when she laid down in the living room. We do know that in the past Barbara was able to function at some level after a night of heavy drinking. Without more evidence, we do not believe that any rational trier of fact could have found beyond a reasonable doubt that, at the time the sexual act occurred, Barbara was physically incapable of declining participation in the sexual act. See Piaskowski, 256 F.3d at 693 ("[I]nferences must be sufficiently strong to avoid a lapse into speculation.").

Further, we also find that the government failed to sufficiently establish that Peters knowingly engaged in a sexual act with Barbara when she was physically incapable of declining participation in the sexual act. In regard to Peters' knowledge, the district court charged the jury:

Now, when the word knowingly is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake, or accident. Knowledge may be proved by the Defendant's conduct and by all the facts and circumstances surrounding the case. You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word here.

The record is devoid of evidence establishing that Peters acted knowingly. Again, there was no evidence presented regarding Barbara's physical state prior to 10:30 p.m., nor was there any evidence presented suggesting when, between 10:30 p.m. and 12:30 a.m., the sexual act occurred. As we have already stated, it is not rational to conclude beyond a reasonable doubt that because Barbara appeared intoxicated when her family and the police arrived at 12:30 a.m., she was physically incapable of declining participation when the sexual act occurred. Similarly, the leap to conclude that Peters knew that Barbara was physically incapable of declining participation in the sexual act is even more attenuated and one that a rational juror could not make. We simply cannot conclude that the evidence presented was sufficient such that any rational trier of fact could have found Peters guilty of each element of the offense beyond a reasonable doubt.

Because we have found insufficient evidence to support the conviction, we need not address the other contention by Peters that the government, in closing argument, improperly commented on his failure to testify.

III. Conclusion

For the foregoing reasons, we REVERSE the district court's judgment of conviction and REMAND with instructions to enter judgment of acquittal in favor of Michael A. Peters.

FOOTNOTE

/* In regard to this testimony, on redirect-examina-
tion, Keith had to be shown a statement that he
had made to the police dated August 12, 1999 in
order to refresh his recollection.