# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3039

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Jeffrey Betone, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 17, 2011
Filed: April 8, 2011

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Jeffrey Betone of two counts of sexual abuse, and the district court[1] sentenced him to 151 months. Betone challenges his sentence and the sufficiency of the evidence supporting his convictions. We affirm.

In 2005 Betone was 19 years old and lived on the Cheyenne River Indian Reservation. He was homosexual but not "out" to his family or community. One evening in March 2005, Betone and Tate Jensen were guests at a drinking party at the

_____

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

home of Sherry Turning Heart.  The other guests left in the early hours of the next day, but Jensen and Betone spent the night because they were both too drunk to go home.  Jensen slept on the living room couch and Betone on the floor beside him.  The only other people in the house were Turning Heart and her ten year old son, who were both sleeping upstairs.

At this point the men's accounts diverge.  Betone testified that he and Jensen talked as they lay in the dark and that he believed Jensen was "coming on" to him.  Betone began fondling Jensen's thigh and genitals.  Jensen undid his own belt and pants, and Betone fellated him.  After a few minutes, a light came on and footsteps could be heard.  Jensen pushed Betone away.  Turning Heart's son came into the room, followed by Turning Heart.  Jensen testified that he passed out on Turning Heart's couch and awoke only when the light came on.  He says he never consented to oral sex.  At some point after Turning Heart came downstairs, Jensen assaulted Betone.  Betone then fled the house.

Tribal police found Betone walking home drunk and barefoot, his mouth bloody and his nose broken.  He claimed to have fallen down, but the skeptical police took him to an emergency room.  Two months later Turning Heart told a tribal officer friend that she had seen Jensen and Betone doing "something [she] did not want to see," but no one investigated further until 2008.  Jensen claims he was too ashamed to report the incident.

Three years later, Betone had sex with Valance Blue Arm, a 30 year old man.  The two met when Betone drove up to Blue Arm on the street and offered him a ride.  Even though Blue Arm was just down the street from his home, he accepted.  Betone offered Blue Arm a beer and a cigarette and then drove to his own home instead of Blue Arm's.

Blue Arm has diminished mental capacity. According to Blue Arm's sister, he "is always scared" and functions "like a little boy," watching children's television programs every day. A tribal officer had noticed Blue Arm around the reservation, "always . . . talking to himself." On the day of his encounter with Betone, Blue Arm was wearing many layers of clothes and underwear as customary with him. Betone later acknowledged that Blue Arm "might have been slow."

Betone cajoled Blue Arm into entering his house. Once inside, Betone fellated Blue Arm twice and later they had anal sex. According to Betone, Blue Arm kissed him back, confirmed that he wanted to have sex, put condoms on Betone, and was sexually aroused. Blue Arm claimed to the contrary that Betone told him he "was not allowed to go anywhere" and locked the door behind him. Blue Arm says he did not resist Betone's sexual advances because he was afraid he would get in trouble if he attacked Betone before "the police were informed." Blue Arm said that he was afraid to resist or leave and that he never consented.

Later that day Blue Arm checked himself into an emergency room. Hospital employees prepared a rape kit from Blue Arm and called police. After interviewing Blue Arm, federal agents learned from tribal police of the earlier incident with Jensen. While in custody, Betone told police he had "thought [oral sex with Jensen] was consensual, but I guess it wasn't" and that Jensen had not moved during the encounter.

The government charged Betone with three counts of sexual abuse:

(1)     knowingly engaging in a sexual act with Jensen while Jensen was "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act," 18 U.S.C. § 2242(2);

(2)    knowingly causing Blue Arm to engage in oral sex "by threatening or placing [him] in fear (other than . . . fear [of anyone's] death, serious bodily injury, or kidnapping)," id. § 2242(1); and

(3)    causing Blue Arm to engage in anal sex through threats or fear, id.

Betone stipulated to federal Indian country jurisdiction under 18 U.S.C. § 1153.

Jensen, Blue Arm, and Betone all testified at trial.  The jury convicted Betone of the first two counts and acquitted him of the third.  At sentencing, the district court applied the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b) to both convictions.  Each enhancement increased Betone's offense level by two levels.  The district court sentenced Betone to 151 months, the low end of his resulting guideline range.  Betone now challenges the sufficiency of the evidence and the application of the vulnerable victim enhancement to both counts.

We review de novo challenges to the sufficiency of evidence presented at trial, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor.  United States v. Coleman, 584 F.3d 1121, 1125 (8th Cir. 2009).

According to Jensen, Betone began fellating him while he was asleep.  That testimony alone establishes the elements of § 2242(2).  See  United States v. Carter, 410 F.3d 1017, 1027 (8th Cir. 2005) (elements established where defendant performed oral sex on victim who was intoxicated and drowsy); United States v. Kirkie, 261 F.3d 761, 768 (8th Cir. 2001) (victim testimony suffices).  Betone points to small differences among the accounts of Jensen, Turning Heart, and her son, such as whether Turning Heart found Jensen on the couch or in the bathroom.  Jensen's testimony alone supports the conviction, however, and is internally consistent.

Only Betone testified that Jensen was awake when oral sex began. In convicting Betone on this count, the jury evidently credited Jensen over Betone. Witness credibility is quintessentially "the province of the jury." Kirkie, 261 F.3d at 768. Betone's conviction for sexually abusing Jensen should be affirmed.

Betone also challenges the sufficiency of the evidence supporting his conviction for sexually abusing Blue Arm. To support a conviction under § 2242(1), the government needed to prove that Betone caused Blue Arm to engage in a sex act by threatening him or placing him in fear. Acknowledging that "a normal 30-year-old man might well have understood that he could avoid . . . unwanted sexual acts," the government argues that Blue Arm's diminished mental capacity lessened the amount of pressure necessary to place him in fear.

According to Blue Arm, Betone told him "you're not going nowhere" and stood in Blue Arm's way when he tried to leave. Blue Arm testified that Betone locked the front door, which Betone denied. Blue Arm said he did not resist or try to leave because he was worried that someone would catch him in Betone's house and that he would be in trouble for being there. After Betone performed oral sex on Blue Arm and before the men had anal sex, Blue Arm tried to leave. Betone grabbed Blue Arm's hand and told him, "You don't want to do that, because it's the worst thing you can do for yourself right here and right now."

The jury had sufficient evidence from which to conclude that Betone knowingly "plac[ed] [Blue Arm] in fear," 18 U.S.C. § 2242(1), because Blue Arm's diminished mental functioning makes him more susceptible to pressure than the average person. At sentencing the district court observed that, it "does not take much time to appreciate that he is cognitively different than a normal person and much lower functioning mentally than a normal person." The court also pointed out that Blue Arm had "struggled to testify" and "barely . . . respond[ed] to the questions" asked on direct examination. This second conviction for sexual abuse should also be affirmed.

-5-

Betone also challenges the district court's application of a two level enhancement to each conviction upon finding that both Jensen and Blue Arm were vulnerable victims. A vulnerable victim "is unusually vulnerable due to age, <u>physical or mental condition</u>, or . . . otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2 (emphasis added). We review de novo the district court's interpretation of the sentencing guidelines and its factual findings for clear error. <u>United States v. Drapeau</u>, 121 F.3d 344, 347 (8th Cir. 1997).

Betone argues that the enhancement was misapplied to the first conviction because Jensen "was not intoxicated to the point where he was a vulnerable victim," contrasting Jensen with the victim in <u>United States v. Chee</u>, 514 F.3d 1106, 1116–17 (10th Cir. 2008). Chee's victim was a physically paralyzed adult with the mental capacity of a five year old. Betone simply argues that Jensen was less vulnerable than that victim, but such difference does not invalidate the district court's findings that Jensen was "passed out, incapable of consenting" and therefore vulnerable "due to . . . [his] physical condition." U.S.S.G. § 3A1.1 cmt. n.2. The district court did not err in finding Jensen a vulnerable victim and applying such an enhancement to Betone for his sexual abuse of Jensen.

Betone's challenge to Blue Arm's vulnerability largely duplicates his challenge to the sufficiency of the evidence for his § 2242(1) conviction. In essence he argues that Blue Arm consented to their encounter and was mentally normal. As discussed above, however, the district court heard ample evidence of Blue Arm's low functioning. It had the opportunity to observe Blue Arm's mental condition and did not err in finding Blue Arm unusually vulnerable to sexual abuse by threats. 18 U.S.C. § 2242(1).

For the foregoing reasons the judgment of the district court is affirmed.

_____