# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3634

_____

United States of America

*Plaintiff - Appellee*

v.

James Bruguier, also known
as James Bruguier, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: June 14, 2012
Filed: December 13, 2012
Filed with dissenting opinion: December 21, 2012

_____

Before MURPHY, BRIGHT, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

James Bruguier was convicted after a jury trial of sexual abuse of an incapacitated person, sexual abuse of a minor, aggravated sexual abuse, and burglary.

The district court[1] sentenced him to 360 months imprisonment, the bottom of his guideline range of 360 months to life, and five years of supervised release. He appeals his conviction and sentence, arguing that the district court gave improper jury instructions, that there was insufficient evidence to sustain the burglary conviction, and that the district court erred in calculating his guideline range. We affirm.

I.

Bruguier was charged with two counts of aggravated sexual abuse and one count of attempted aggravated sexual abuse, 18 U.S.C. § 2241(a), sexual abuse of an incapacitated person, 18 U.S.C. § 2242(2), burglary, S.D.C.L. § 22-32-1, and sexual abuse of a minor, 18 U.S.C. § 2243(a). The charges stemmed from separate events involving four different victims: Crystal Stricker, Vicki Johnson, T.S., and K.S. Bruguier is an American Indian and all of the incidents occurred in Indian country. See 18 U.S.C. § 1153. After a three day trial, the jury found Bruguier guilty of sexual abuse of an incapacitated person, Crystal Stricker, sexual abuse of a minor, K.S., aggravated sexual abuse of T.S., and burglary. It acquitted him of aggravated sexual abuse of Crystal Stricker and attempted aggravated sexual abuse of Vicki Johnson.

The charges against Bruguier involving Crystal Stricker, for sexual abuse of an incapacitated person and for aggravated sexual abuse, arose from events in January 2011. Witnesses testified that Crystal had been consuming large amounts of alcohol one night at the house where she lived with her boyfriend Mike Miller before leaving for her sister Helen's house. Crystal continued drinking there. Bruguier, Helen's boyfriend, was also in the house. Some time after 3 a.m. Helen took Crystal home. While Crystal and Mike's sister were talking in the kitchen, Bruguier came to the door and Crystal let him in. Mike had gone to bed but his sister spent a short time in the

---

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

-2-

living room with Bruguier and Crystal before returning to the kitchen. Crystal later testified that she was so intoxicated that night that she did not even remember returning home from Helen's house.

A loud noise caused Mike and his sister to rush to the living room where they saw Crystal lying on the floor with Bruguier on top of her. Bruguier had told the sister to "shut up" when she had yelled for her brother. She and Mike testified that Crystal was not moving when they got to the living room. Her head was slanted against the wall, and her eyes were closed. According to Mike, she was "laying like she was knocked out." Mike grabbed Bruguier and told him to leave. Mike saw that Bruguier's penis was erect and that Crystal did not have any pants on and had semen between her legs. When he began to shake Crystal, she opened her eyes. At trial Crystal testified that she remembered Mike waking her up and that she believed that Bruguier had raped her. She waited until the following day to call the police to make sure she was "in [her] right mind to give a statement." A sexual assault exam of Crystal revealed vaginal bruising and semen matching Bruguier's DNA.

Bruguier testified that he had not intended to go to Crystal's house that night but had gone for a drive and then got stuck in the snow in her driveway. He testified that Crystal came to the door and told him to "shut up and get in here." According to him, Crystal began making sexual advances when he went inside the house, and they had consensual sexual intercourse on the living room floor. He also testified that the two had had consensual sex once before. The jury acquitted Bruguier of the aggravated sexual abuse charge related to this incident, but it convicted him for the sexual abuse of an incapacitated person.

The sexual abuse of a minor charge involved 13 year old K.S. She testified that she "lost [her] virginity" to Bruguier in her grandmother's basement and that they again had sex several weeks later. Bruguier admitted having had sex with K.S. two

-3-

times when she was in the sixth grade. The jury found him guilty of sexual abuse of a minor.

The charges of burglary and aggravated sexual abuse of T.S. involved an incident in the summer of 2010 at her home. T.S. was then a teenager, and she testified that she had woken up in the middle of the night after hearing a noise and thought that someone was crawling through her bedroom window. She then saw Bruguier standing in her bedroom and told him to get out. Bruguier asked her why she was with her boyfriend and not him. T.S. told him again to leave, but instead Bruguier hit her on the head with a can of hair spray and raped her. T.S. told several friends and a youth counselor about the attack. One testified that T.S. had told her that Bruguier had come in through the bedroom window and asked T.S. why she wanted to be with her boyfriend since he "could take [her] other places better." The jury found Bruguier guilty of both burglary and aggravated sexual abuse of T.S.

After the verdict was returned, Bruguier moved for a new trial and for a judgment of acquittal on the charges of sexual abuse of an incapacitated person, burglary, and aggravated sexual abuse of T.S. The motions were denied. A presentence investigation report (PSR) calculated his guideline range to be 360 months to life, based on his criminal history category II and the total offense level of 41. Bruguier objected to proposed sentencing enhancements for a vulnerable victim and for a pattern of sexual misconduct against minors. He also objected to the PSR's failure to credit his acceptance of responsibility for sexual abuse of a minor.

The district court overruled his objections and adopted the PSR calculations. It imposed concurrent 360 month sentences on Bruguier's convictions for sexual abuse of an incapacitated person and for aggravated sexual abuse of T.S., as well as statutory maximum sentences of 300 months for the burglary and 180 months for the sexual abuse of a minor, to run concurrently. He also received five years of supervised release. The district court considered and rejected Bruguier's arguments

for a downward variance when it imposed this sentence at the bottom of the guideline range. The court concluded that the sentence was necessary to "protect society as a whole" and to reflect the seriousness of Bruguier's offense, given the evidence regarding its negative impact on the victims, the fact that there were multiple victims including a 13 year old, and the fact that two of the sexual assaults had occurred in the victims' own homes.

Bruguier appeals his convictions and sentences, contending that the district court improperly instructed the jury, constructively amended the indictment on the sexual abuse of an incapacitated person charge, and erred in calculating his guideline range. He argues in addition that there was insufficient evidence to sustain the burglary conviction.

## II.

### A.

We first examine Bruguier's challenges to the jury instruction on the charge of sexual abuse of an incapacitated person. Bruguier argues that the district court erred by not including as an element of the offense that he had to know that Crystal was physically incapable of consent. He also claims that the jury instruction constructively amended the indictment. We review the district court's jury instructions for an abuse of discretion and will affirm if the "instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001). Reversal is appropriate only if the failure to instruct properly was prejudicial. United States v. Mitchell, 613 F.3d 862, 867 (8th Cir. 2010).

The sexual abuse statute criminalizes in relevant part "knowingly":

(1) caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear . . .; or

(2) engag[ing] in a sexual act with another person if that other person is–

 (A) incapable of apprising the nature of the conduct; or

 (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act . . . .

18 U.S.C. § 2242. Bruguier was indicted under subsection 2, and the jury instruction listed four elements: (1) that he "did knowingly cause or attempt to cause Crystal Stricker to engage in a sexual act"; (2) that Crystal was "physically incapable of declining participation in and communicating unwillingness to engage in that sexual act"; (3) that Bruguier is an Indian; and (4) that the offense happened in Indian country.

Bruguier argues that a fifth element should have been added to the instruction to require a finding that he had known that Crystal Stricker was physically incapable of declining or communicating her unwillingness to participate. He concedes that there is no authority in this circuit for extending the "knowingly" requirement but argues that the Seventh Circuit "tacitly approved" such an instruction. See United States v. Peters, 277 F.3d 963, 968 (7th Cir. 2002). He also cites several Supreme Court cases interpreting different criminal statutes, but applying the "knowingly" requirement to words other than just the immediately following verb. See, e.g., United States v. X-Citement Video, 513 U.S. 64, 72 (1994) (noting that "presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct"); Arthur Andersen LLP v. United States, 544 U.S. 696, 706 (2005) (construing statute to limit its reach to those conscious of wrongdoing).

The district court's jury instruction accurately conveyed the law. Neither the statute nor the case law supports Bruguier's proposed additional requirement. See, e.g., United States v. Betone, 636 F.3d 384, 387 (8th Cir. 2011); United States v. Wilcox, 487 F.3d 1163, 1169 (8th Cir. 2007). The "most natural grammatical reading" of the statute suggests that "knowingly" only modifies the surrounding verb, which in this case is the phrase "engages in a sexual act." See X-Citement Video, 513 U.S. at 68; United States v. Yielding, 657 F.3d 688, 714 (8th Cir. 2011). The Seventh Circuit case on which Bruguier relies is distinguishable. There, the court examined the sufficiency of the evidence to support a § 2242(2) conviction for which the district court had given an uncontested instruction like the one Bruguier seeks here, but the propriety of the instruction was not before the court. Peters, 277 F.3d at 968.

Bruguier cites X-Citement Video and Andersen to support his position that "knowingly" should apply to the disability element, not merely to the verb, but those cases did not examine sexual abuse statutes. While courts may "ordinarily" read "knowingly" to modify each element of a criminal offense, "the inquiry into a sentence's meaning is a contextual one." Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009). There are some contexts in which courts do not read "knowingly" to modify all elements of an offense. See id. at 660 (Alito, J., concurring). In fact the Court noted in X-Citement Video that the common law mens rea presumption "expressly excepted 'sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent.'" 513 U.S. at 72 n.2 (citing Morissette v. United States, 342 U.S. 246, 251 n.8 (1952)). That makes sense because in such a context the "perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." Id. Similarly, where an individual has sex with someone physically incapable of consent as here, he "confronts the . . . victim personally" and it is reasonable to require him to ensure that consent has been given. See id.

For the court to add a fifth element to the required proof for a § 2242(2) violation would run contrary to congressional intent. In drafting § 2242(2), Congress elected not to make lack of consent an element of the offense or to require the prosecution to introduce any evidence regarding whether the victim consented. H. Rep. No. 99-594, at 16 (1986). Congress reasonably decided that the best way to prevent sexual assault on persons who are mentally or physically unable to resist was to put the obligation on the instigator of the sexual act to confirm the other's ability to consent. This was a practical resolution given the type of acts and circumstances which § 2242(2) is regulating. Sexual encounters where one partner is even arguably unable to consent to the activity represent conduct that a "reasonable person should know is subject to stringent public regulation." United States v. Collins, 949 F.2d 1029, 1031 (8th Cir. 1991).

This regulation is of particular concern in Indian communities which have unfortunately experienced much sexual violence.[2] There is evidence that one in three American Indian women have been raped or experienced an attempted rape, with a rate of sexual assault twice the national average. See Patricia Tjaden & Nancy Thoennes, Full Report of the Prevalence, Incidence, and Consequences of Violence Against Women, at 22 (2000), available at https://www.ncjrs.gov/pdffiles1/nij/183781.pdf; see also Amnesty International, Maze of Injustice: The Failure to Protect Indigenous Women from Sexual Violence in the USA, at 2 & n.9 (2007) (citing the DOJ report) (http://www.amnestyusa.org/pdfs/MazeOfInjustice.pdf); United States v. Deegan, 605 F.3d 625, 662–65 & nn. 32–34 (8th Cir. 2010) (Bright, J., dissenting) (appendix

---

[2] Appeals filed since last fall in cases charging § 2242(2) violations in Indian Country include: Nos. 11-3039 United States v. Rouillard; 11-3634 United States v. Bruguier; 12-1831 United States v. Villarreal; 12-1193 United States v. Chasing Hawk; 12-2057 United States v. Birdhorse; 12-2750 United States v. Medicine Bird Morsette; 12-3031 United States v. Dustin Morsette; 12-3687 United States v. Ford.

to dissent entitled "Lifting the Curtain on Assaults Against Women and Children in Indian Country").

The case before the court illustrates a paradigmatic predator victimizing women. Here, Bruguier took advantage of three women unable to resist his violent acts, including a thirteen year old girl, a teenager asleep in her own bedroom, and a passed out intoxicated woman. In a society that is plagued with these sorts of crimes, Congress reasonably imposed the obligation on a defendant either to be sure that his partner is capable of and has provided consent to the sexual act or to assume the risk of conviction if she could not. See X-Citement Video, 513 U.S. at 76 n.5.

Given all these considerations and based on the record in this case, we conclude that the instruction "fairly and adequately submitted the issues to the jury." Lalley, 257 F.3d at 755.

B.

Bruguier also argues that the instruction constructively amended the indictment. Constructive amendment occurs "when the essential elements of the offense as charged in the indictment are altered in such a manner . . . that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007). The question is whether "the jury instructions created a 'substantial likelihood' that the defendant was convicted of an uncharged offense." Id. (citations omitted). Since Bruguier failed to raise this argument before the district court, the parties agree that plain error review applies. Under that standard, reversal is required only if Bruguier could show that "a constructive amendment affects his substantial rights and the fairness, integrity or public reputation of judicial proceedings." United States v. Lara-Ruiz, 681 F.3d 914, 923 (8th Cir. 2012).

-9-

The indictment charged that Bruguier "did knowingly engage in and attempt to engage in a sexual act with Crystal Stricker" while she was incapable of declining participation. The jury instruction first recited the language of the indictment and then listed the first element of the offense as "James Bruguier did knowingly cause or attempt to cause Crystal Stricker to engage in a sexual act" while she was incapable of declining participation. The instruction's use of the verb "cause" does not appear in the indictment or in § 2242(2) but mimics language in § 2242(1), which imposes criminal liability for knowingly "cau[sing] another person to engage in a sexual act by threatening or placing that other person in fear."

Bruguier argues that although the instruction correctly required that Crystal be incapable of declining participation, its requirement that he "cause[d] . . . Crystal Stricker to engage in a sexual act" rather than that he "engage[d] in . . . a sexual act with Crystal Stricker" amounts to a constructive amendment. He contends that these two formulations are materially different because a defendant could cause someone to engage in a sexual act without actually engaging in it himself. He offers the hypothetical example of a defendant threatening harm to someone's child unless that parent would have sex with the defendant's friend.

It is clear that the evidence before the jury bore no relation to the hypothetical Bruguier offers on appeal. Bruguier has not shown a reasonable probability that he would have been acquitted but for this alleged error as required for plain error review. See Lara-Ruiz, 681 F.3d at 924. The exact language of the indictment, which also tracked the language of § 2242(2), was read to the jury and minimized any prejudice. See United States v. Gavin, 583 F.3d 542, 547 (8th Cir. 2009). Furthermore, the government presented substantial evidence that Bruguier engaged in a sexual act with Crystal so that there is "no reasonable probability that [he] would have been acquitted" without the alleged error. Id.

III.

We turn next to Bruguier's argument that there was insufficient evidence to sustain his burglary conviction. While the government suggests that our review should be for plain error, we conclude that Bruguier sufficiently preserved this issue by moving for a judgment of acquittal on his burglary conviction. See United States v. May, 476 F.3d 638, 640 (8th Cir. 2007). We review challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences that support it. United States v. Causevic, 636 F.3d 998, 1005 (8th Cir. 2011). Following South Dakota's first degree burglary statute, the jury instructions directed that Bruguier was guilty of this offense if he had unlawfully entered or remained in the home occupied by T.S. at night "with the intent to commit the crime of sexual assault," that Bruguier is an Indian, and that the offense took place in Indian country. See S.D.C.L. § 22-32-1; 18 U.S.C. § 1153. Bruguier argues that there was insufficient evidence for the jury to find that he entered or remained in the home with the intent to assault T.S. sexually. According to him, the evidence only established that the assault occurred on impulse without predetermined motive.

We conclude that there was sufficient evidence for the jury to find that Bruguier entered or remained in the home of T.S. with the intent to assault her sexually. Under South Dakota law, specific intent "need not be directly or positively proved and . . . may be inferred from the circumstances." State v. Peck, 150 N.W.2d 725, 728 (S.D. 1967). Here, the evidence shows that Bruguier crawled through T.S.'s bedroom window uninvited in the middle of the night and woke her up. He began to talk to her about her boyfriend, suggesting she should be in a relationship with him instead because he could take her "other places better." After she told him to leave, he hit her on the head with a can of hair spray and raped her. This evidence was more than sufficient for a reasonable jury to find Bruguier guilty of burglary beyond a reasonable doubt. Moreover, the jury acquitted Bruguier of two other counts,

-11-

showing that it "carefully weighed all of the evidence, and took seriously its duty not to convict [Bruguier] of counts the government did not prove beyond a reasonable doubt." United States v. Plumman, 409 F.3d 919, 930 (8th Cir. 2005).

IV.

We finally examine Bruguier's challenges to his sentence. In reviewing a sentence, we first consider whether any procedural error was committed such as improperly calculating the guideline range. Gall v. United States, 552 U.S. 38, 51 (2007). We review the district court's application of the guidelines de novo and its factual findings for clear error. United States v. Davidson, 437 F.3d 737, 739–40 (8th Cir. 2006). We then review the sentence for substantive reasonableness under an abuse of discretion standard. Gall, 552 U.S. at 51. Bruguier argues that the district court made three procedural errors in calculating his guideline range of 360 months to life. We address each in turn.

Bruguier challenges the way in which the district court applied a five level enhancement for a pattern of covered sex offenses under U.S.S.G. § 4B1.5(b)(1). That guideline provision applies "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct." § 4B1.5(b). A "covered sex crime" includes certain offenses committed against minors. § 4B1.5 cmt. n.2. If the defendant qualifies, the provision directs that "the offense level determined under Chapters Two and Three" should be increased by 5 levels. § 4B1.5(b)(1). The parties agree that Bruguier's convictions for sexual abuse of the minors T.S. and K.S. are "covered sex crimes," although the other two counts of conviction are not.

Bruguier argues that the district court erred in adding the 5 level enhancement to his combined offense level instead of applying it to the two "covered sex crime" counts. That would have resulted in a lower guideline range. Chief Judge Schreier

-12-

cited U.S.S.G. § 1B1.1 in explaining how she calculated the advisory guideline range. She noted that the provision directs that the sentencing court first determine the base offense level for each crime of conviction, then apply Chapter 3 to determined a "single-offense level that encompasses all the counts of which the Defendant is convicted." Only thereafter are Chapter 4 enhancements applied to the combined offense level. See U.S.S.G. § 1B1.1(a)(6).

Bruguier concedes that the district court followed the order required by § 1B1.1, but he contends that § 4B1.5 creates ambiguity as to how the enhancement should be applied. He argues that the rule of lenity compels that any ambiguity be resolved in his favor. See, e.g., King v. United States, 595 F.3d 844, 851 (8th Cir. 2010) (where there are "two plausible readings of a guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence" (citation omitted)). He seeks a remand for application of the 5 level enhancement to the individual covered sex crimes before the combined offense level is determined.

We do not find any ambiguity in the guidelines as to the proper method for applying the enhancement, and we conclude that the district court correctly applied it to the combined offense level rather than to individual counts. The guidelines generally direct that multiple counts of conviction are to be grouped and a combined offense level determined before application of any adjustments under Chapter 4 Part B. U.S.S.G. § 1B1.1(a). The specific enhancement at issue here confirms this reading. It clearly instructs that the 5 point increase should be added to the "offense level determined under Chapters Two and Three." U.S.S.G. § 4B1.5(b)(1); see also U.S.S.G. § 3D1.5 Commentary (noting that combined offense level is subject to adjustments from Chapter 4, Part B). It follows from a plain reading of the guidelines that the enhancement for a pattern of covered sex offenses is to be applied to the combined offense level determined in Chapter 3, Part D. We therefore conclude that the district court properly applied § 4B1.5 in calculating Bruguier's guideline range.

See Gall, 552 U.S. at 51 (appellate court must "first ensure that the district court committed no significant procedural error, such as . . . improperly calculating . . . the Guidelines range").

We next examine Bruguier's argument that the district court erred by not granting him credit for acceptance of responsibility on his conviction for sexual abuse of a minor. He notes that he admitted his guilt at trial and had previously offered to plead guilty to that charge. A defendant may qualify for a 2 point reduction when he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The sentencing court considers whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction." § 3E1.1 cmt. n.1(A). He is not eligible if he "falsely denies, or frivolously contests, relevant conduct that the court determines to be true." Id. Bruguier argues that the district court should have focused on his conduct in respect to K.S. alone when it concluded he was not eligible for the reduction. He accepted responsibility for that offense, and argues that other offenses should not have been considered on the question of acceptance because they occurred at different times and involved different victims.

We conclude that Bruguier was not eligible for an acceptance of responsibility reduction. He did not admit to guilt for the other three counts which formed the basis for his combined offense level. The guidelines state that a reduction under § 3E1.1 is only applied after grouping multiple counts under Chapter 3 Part D and determining a combined offense level. See § 1B1.1(a); § 3D1.1 Background Note (indicating that acceptance of responsibility adjustment is made after determining the combined offense level); § 3D1.5 Commentary (noting that combined offense level is "subject to adjustments from Chapter Three, Part E (Acceptance of Responsibility)"). The other counts formed part of the "offense(s) of conviction" to which Bruguier was required to "truthfully admit[]" in order to qualify for the reduction. See § 3E1.1 Note 1(A). Since he did not admit to the other counts, he was not eligible for the acceptance of responsibility reduction, and the district court

properly denied it. See, e.g., United States v. Ginn, 87 F.3d 367, 371 (9th Cir. 1996) ("Because an adjustment for acceptance of responsibility is made only after the combined offense level is computed, the Sentencing Guidelines do not 'contemplate calculating acceptance of responsibility for each offense.'" (citation omitted)); United States v. Hargrove, 478 F.3d 195, 199–200 (4th Cir. 2007).

Bruguier also argues that the district court erred in applying a vulnerable victim adjustment to his conviction for sexual abuse of an incapacitated person. That provision allows for a 2 level increase if the defendant "knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). The application note defines vulnerable victim as someone "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." § 3A1.1 cmt. n.2. The note states that the enhancement is intended for defendants who know of the victim's "unusual vulnerability," giving the example of a robbery where the defendant selects a handicapped victim. Id.

Bruguier contends that it was improper to apply this enhancement to his conviction for sexual abuse of an incapacitated person because the statute that he was convicted under already accounted for victim vulnerability as an element of the offense. See 18 U.S.C. § 2242(2) (requiring that victim be "physically incapable of declining participation"). He argues that applying the enhancement added additional consequences to a factor that had already been accounted for in assigning the base offense level for a § 2242(2) conviction. He contends that it would only be proper to apply the enhancement if Crystal had been "unusually vulnerable" in comparison to other § 2242(2) victims. See United States v. De Oliviera, 623 F.3d 593, 598 (8th Cir. 2010).

The record supports the district court's finding that Crystal was "unusually vulnerable" and that Bruguier "knew she was unusually vulnerable." The facts of this case are similar to those in United States v. Betone, 636 F.3d 384, 388 (8th Cir.

-15-

2011). In <u>Betone</u>, we upheld a vulnerable victim enhancement on a § 2242(2) conviction where the victim had "passed out" from intoxication. <u>Id.</u> Here, the district court found that Crystal had been given a ride home from Bruguier's house by her sister because she was too intoxicated to drive. Soon after she left his house, Bruguier drove to her home and had sex with her on her living room floor. After witnesses heard a loud noise, they saw Crystal apparently unconscious with Bruguier on top of her. The district court considered Crystal's testimony that she had no memory of the sexual encounter. Because it was not clearly erroneous to find that Crystal was unusually vulnerable at the time of the assault, we uphold the vulnerable victim enhancement. <u>Id.</u>

Moreover, any error in applying the vulnerable victim enhancement would have been harmless. While eliminating the enhancement would have lowered the base offense level <u>for this count</u> from 32 to 30, Bruguier's <u>combined offense level</u> would still have been 41 under the guideline grouping rules, resulting in the same guideline range of 360 months to life imprisonment. <u>See</u> U.S.S.G. § 3D1.4 (2 units would still have been added to the highest offense level of 34 before adding the 5 point increase for pattern of sexual activity).

In sum, the district court correctly applied the guidelines in calculating Bruguier's guideline range of 360 months to life. We conclude that the sentence was thus "procedurally sound." <u>Gall</u>, 552 U.S. at 51. Since Bruguier does not challenge the substantive reasonableness of his sentence, we need not address that subject. <u>See</u> <u>United States v. Brown</u>, 550 F.3d 724, 729 n.4 (8th Cir. 2008).

V.

Accordingly, the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, dissenting with opinion to follow.

-16-

BRIGHT, Circuit Judge, dissenting in part.

We have a unique situation here where two opinions, based on similar factual scenarios, filed simultaneously, have set forth directly opposite conclusions on the same issue. The appellant in *United States v. Larry Rouillard*, No. 11-3039, 2012 WL 6197847 (8th Cir. Dec. 13, 2012), contends, as does Bruguier, that section 2242(2) requires the defendant to have knowledge of the victim's capacity or inability to consent. In my view, the *Rouillard* panel correctly concluded in the affirmative.

In this case both Bruguier and Crystal were intoxicated from the effects of their boozing. When she awoke, Crystal had no recollection of having sexual intercourse with Bruguier the night before. Contrary to her asserted belief that she had been raped, Bruguier claims the two had consensual sexual intercourse. On these facts, Bruguier asked the district court to instruct the jury that to find him guilty of sexual abuse of Crystal they had to find, as an element of the offense, that Bruguier knew Crystal was physically incapable of consenting to the sexual act. In refusing Bruguier's request, the district court erred. *United States v. James Bruguier*, No. CR. 11-40012-01-KES, 2011 WL 4708853 (D.S.D. Oct. 4, 2011). I therefore dissent[3] from the majority and adopt the analysis in *Rouillard* as providing the correct interpretation of section 2242(2) and the relevant case law.

The Government's insistence that *United States v. Betone*, 636 F.3d 384 (8th Cir. 2011), has resolved this precise issue can be dispensed with, as the *Rouillard* panel has, because:

> [T]he argument that [Bruguier] raises on appeal is different than the one raised in *Betone* . . . [where] the defendant merely argued that there was

_____

[3]I agree with my colleagues with regard to the sufficiency of the evidence to sustain Bruguier's burglary conviction and the district court's calculation of his Guidelines range.

insufficient evidence to support his conviction. Here, [Bruguier] focuses his argument on the mens rea requirement of section 2242(2). . . . The legal issue raised by [Bruguier] is distinguishable from the one framed by *Betone*.

*Rouillard*, 2012 WL 6197847, at *3. Further, as the *Rouillard* panel aptly explained:

"[S]ex crimes committed against the vulnerable, such as an unconscious or intoxicated individual, are particularly egregious and dehumanizing." *United States v. Riley*, 183 F.3d 1155, 1160 (9th Cir. 1999). The harm experienced by a victim is not alleviated where the assailant is acquitted based on his claim that he *did not know* that the victim was incapacitated. However, "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 71-72 (1994). Knowingly "engag[ing] in a sexual act with another person" is not inherently criminal under federal law, barring some other attendant circumstance. Thus, . . . [section 2242(2)] is properly read as requiring defendant's knowledge that the other person was incapacitated.

*Id.* at *4 (emphasis in original).

Despite the majority's position that *United States v. Peters*, 277 F.3d 963 (7th Cir. 2002), is distinguishable because the district court there did not consider the propriety of the jury instruction "like the one Bruguier seeks," the Seventh Circuit's decision supports Bruguier's contention. The district court instructed the jury that to sustain the charge of sexual abuse in violation of section 2242(2) they needed to find Peters knew the victim was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act. *Id.* at 966. As a ground for reversal, the Seventh Circuit concluded the government failed to sufficiently establish that Peters knowingly engaged in a sexual act with the victim when she was physically incapable of declining participation. The court thereby adopted the scienter requirement of knowingly to require knowledge of the victim's inability to

-18-

decline participation in the sexual act. *Id.* at 968. The court did not reject the validity of the jury instructions. Although implicit, the court in essence adopted the same instructions Bruguier requested.

Some may assert that section 2242(2) does not appear to require the mens rea Bruguier urges. However, where a statute is silent on the mens rea, that "silence . . . by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal." *Staples v. United* States, 511 U.S. 600, 605 (1994). "[T]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of [our] criminal jurisprudence." *Id.* (quotation omitted). Mens rea is important in determining criminal responsibility and to avoid punishing a defendant for something he may not have known about, such as here, where Bruguier was so grossly intoxicated that he may not have known or realized Crystal was incapable of declining participation in the sexual act.

Because I believe the district court erred in instructing the jury on the charge of sexual abuse of Crystal, I also dissent from the majority's position that any error in applying the vulnerable victim adjustment to Bruguier's conviction was harmless. Absent a guilty verdict on this charge, Bruguier's combined offense level would be 40, not 41, and result in a guideline range of 324 to 405 months in prison. *See* U.S.S.G. § 3D1.4. This difference is anything but harmless.

Finally, I note that Bruguier should not have received a guidelines sentence. The district court's decision to sentence Bruguier to 30 years in prison is reflective of the heavy sentences typically imposed on American Indians for crimes committed on reservations as compared to sentences imposed for crimes committed by non-Indians off the reservations. *See United States v. Deegan*, 605 F.3d 625 (8th Cir. 2010) (Bright, J., dissenting) (noting the disparate treatment in sentencing between a woman on the reservation versus a woman off the reservation for the crime of neonaticide); *Native Americans and the Death Penalty*, Death Penalty Information

Center, http://www.deathpenaltyinfo.org/native-americans-and-death-penalty (last visited Dec. 19, 2012) ("On average, American Indians receive longer sentences than non-Indians for crimes. They also tend to serve longer time in prison for their sentences than non-Native Americans.")

    I would remand for a new trial on the charge of sexual abuse of Crystal or a resentencing without consideration of that charge. To resolve this intra-circuit conflict, I believe an en banc review of this issue would be appropriate. In the meantime, I urge district courts to follow the rule of law in *Rouillard*.

———————————————