# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3634

_____

United States of America

*Plaintiff - Appellee*

v.

James Bruguier, also known
as James Bruguier, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: April 12, 2013
Filed: November 5, 2013

_____

Before RILEY, Chief Judge, BRIGHT, WOLLMAN, LOKEN, MURPHY, BYE,
SMITH, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit Judges,
En Banc.

_____

SHEPHERD, Circuit Judge.

A jury convicted James Bruguier of sexual abuse, in violation of 18 U.S.C.
§ 2242(2); burglary, in violation of S.D. Codified Laws § 22-32-1; aggravated sexual
abuse, in violation of 18 U.S.C. § 2241(a); and sexual abuse of a minor, in violation

of 18 U.S.C. § 2243(a).[1]   The district court sentenced him to 360 months imprisonment followed by five years of supervised release.  Bruguier challenges only two of his four convictions on appeal.   First, he challenges his sexual abuse conviction under section 2242(2), arguing the jury instructions on that offense erroneously omitted a mens rea element and constructively amended the indictment. Second, he challenges his burglary conviction, arguing insufficiency of the evidence. In addition, Bruguier challenges his sentence.  We have jurisdiction under 28 U.S.C. § 1291.  Because we hold that the jury instructions erroneously omitted a mens rea element, we reverse his sexual abuse conviction under section 2242(2), remand for a new trial on that count, and consequently vacate his sentence.  We affirm his burglary conviction.

I.

Bruguier's sexual abuse conviction under section 2242(2) stems from an incident at Crystal Stricker and her boyfriend Mike Miller's home in Lake Andes, South Dakota, on January 10, 2011.  Witnesses testified that Stricker and Tracie Thunder Horse, Miller's sister, returned to Stricker's home after a long night of drinking.  Miller was asleep in the house, woke up briefly when they returned, and then went back to bed.

Thunder Horse testified that Bruguier arrived at Stricker's home later that night.  She said that Bruguier and Stricker spoke in the living room, while she went into the kitchen.  Thunder Horse testified that while she was in the kitchen, she heard "a big boom" and turned around to see Stricker lying on the living room floor. Bruguier "was on top of her, pulling her pants down" and "was starting to have sex

---

[1]All of these offenses are covered by 18 U.S.C. § 1153 as offenses committed within Indian country.  The term "sexual act" for purposes of these convictions is defined in 18 U.S.C. § 2246(2).

with her." Thunder Horse testified that Stricker's eyes were closed, her head was pushed up against the wall, and she was not moving or speaking. Thunder Horse "got scared" and called for Miller, and Bruguier "told [her] to shut up."

Miller testified that he was in bed when he heard "a big bang in the living room," followed by Thunder Horse calling his name. He also heard someone say "Shut up." Miller went to the living room, where he saw Bruguier having sex with Stricker. Miller testified that Stricker was not moving or speaking, that "her head was tilted towards the vent" on the wall, and that "[h]er eyes were open, but they were glossy red." Miller grabbed Bruguier's shoulder and told him to leave. He noticed that Bruguier's penis was erect and that Stricker had semen between her legs. Miller described Stricker as "laying like she was knocked out" and "in a daze." Thunder Horse testified that after Miller threw Bruguier out of the house, Miller "went to [Stricker] and started shaking her . . . and calling her name, telling her to get up."

Stricker testified she was so intoxicated that evening that she did not remember returning home. However, she testified that she did remember standing in her living room near the stereo some time after returning home. The next thing she remembered after that was lying in her own bed while Miller told her what had happened with Bruguier. Stricker testified that she felt "dirty" when Miller told her what Bruguier had done and that she never consented to having sex with Bruguier.

Bruguier testified that Stricker kept asking him to dance after he arrived at her house and that they kissed and had consensual sex. He testified that Stricker was conscious, moving, and moaning throughout their sexual encounter and that she never asked him to stop.

Bruguier's burglary conviction stems from an unrelated incident during the summer of 2010. T.S., who was a minor at the time, testified at trial that she was

asleep in her Lake Andes home when she heard a noise and awakened to find Bruguier standing in her room. Bruguier asked T.S. why she was dating her boyfriend instead of him. T.S. testified that she told Bruguier to leave, but he hit her on the head and raped her.

Bruguier stipulated that he is an American Indian and that all alleged events occurred in Indian country.

## II.

### A.

Bruguier first argues that the jury instructions for his sexual abuse conviction under 18 U.S.C. § 2242(2) were erroneous both because they omitted a mens rea element of the offense and because they constructively amended the indictment. Because we find his mens rea argument dispositive, we need not address his constructive amendment argument. "[A]lthough district courts exercise wide discretion in <u>formulating</u> jury instructions, when the refusal of a proffered instruction simultaneously denies a legal defense, the correct standard of review is de novo." <u>United States v. Young</u>, 613 F.3d 735, 744 (8th Cir. 2010) (internal citation omitted). Thus, we review Bruguier's jury instructions de novo, beginning with the language of the statute.

Section 2242 states in pertinent part:

Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly—

. . .

-4-

(2) engages in a sexual act with another person if that other person is—

    (A) incapable of appraising the nature of the conduct; or

    (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

§ 2242.

Bruguier contends section 2242(2) requires that the defendant have knowledge of the victim's incapacity or inability to consent. To that end, Bruguier proposed a jury instruction that would have required the jury to find not only that he knowingly engaged in a sexual act with Stricker and that Stricker was incapable of consenting, but also "that James Bruguier knew that Crystal Stricker was physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." The district court rejected Bruguier's proposed instruction. Instead, the court construed the applicable elements of section 2242(2) as being (1) that "Bruguier did knowingly cause or attempt to cause Crystal Stricker to engage in a sexual act"; (2) "that Crystal Stricker was physically incapable of declining participation in and communicating unwillingness to engage in that sexual act"; (3) that Bruguier is an Indian; and (4) that the offense took place in Indian country.

The issue before us is whether "knowingly" in section 2242(2) requires only that Bruguier knowingly engaged in a sexual act with Stricker, or whether it also requires that Bruguier knew Stricker was "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating

-5-

unwillingness to engage in, that sexual act." § 2242(2). This is an issue of first impression for this Court.[2]

"[D]etermining the mental state required for commission of a federal crime requires construction of the statute and . . . inference of the intent of Congress." Staples v. United States, 511 U.S. 600, 605 (1994) (internal quotation marks omitted). "The language of the statute [is] the starting place in our inquiry . . . ." Id. The Supreme Court has stated that courts "ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009).[3] Moreover, "offenses that require no mens rea generally are disfavored, and [the Supreme Court has] suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime." Staples, 511 U.S. at 606 (internal citation omitted). Thus, pursuant to Staples and Flores-Figueroa, there is a presumption that "knowingly" in section 2242(2) applies to the

---

[2]In United States v. Betone, 636 F.3d 384 (8th Cir. 2011), we addressed a sufficiency of the evidence challenge under section 2242(2). Pointing to the male victim's testimony that the defendant began fellating him while he was asleep, we concluded that the victim's "testimony alone establishe[d] the elements of § 2242(2)." Id. at 387. We noted that "[o]nly [the defendant] testified that [the victim] was awake when oral sex began" and that "the jury evidently credited [the victim] over [the defendant]." Id. Thus, while the Betone court found the evidence sufficient to support all elements of a section 2242(2) conviction, it did not address the more discrete legal issue that Bruguier raises: whether "knowingly" in section 2242(2) requires a defendant to have knowledge of a victim's incapacity or inability to grant consent.

[3]Flores-Figueroa relied heavily on the Supreme Court's earlier decisions in United States v. X-Citement Video, Inc., 513 U.S. 64 (1994) and Liparota v. United States, 471 U.S. 419 (1985). See Flores-Figueroa, 556 U.S. at 652-53. X-Citement Video involved a statute that, like section 2242(2), had a dash between the term "knowingly" and some of the other elements. See X-Citement Video, 513 U.S. at 68.

circumstances following the conjunction "if." Reading section 2242(2) in "the manner in which the courts ordinarily interpret criminal statutes," Flores-Figueroa, 556 U.S. at 652, leads to the conclusion that section 2242(2) requires that Bruguier knew Stricker was "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act," § 2242(2).

We find no reason to depart from the ordinary approach that the Supreme Court articulated in Staples and Flores-Figueroa. The Supreme Court has explained that situations where the term "knowingly" does not apply to all elements that follow it "typically involve special contexts or . . . background circumstances that call for such a reading." Flores-Figueroa, 556 U.S. at 652. Here, however, neither the "context" nor "background circumstances" lead to the conclusion that "knowingly" in section 2242(2) does not apply to the victim's incapacity or inability to consent. In fact, the context and background circumstances further compel the conclusion that "knowingly" does apply to each element.

Section 2242(2) was passed into law as part of the Sexual Abuse Act of 1986 ("the Act"). See Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87, 100 Stat. 3592, 3620-24 (codified as amended at 18 U.S.C. § 2241-44, 2246). In addition to section 2242(2), the Act included two other statutes that use the term "knowingly" and then specify circumstances under which it would be illegal for a defendant to "engage[] in a sexual act."[4] See 100 Stat. 3620-21. The first statute, codified at 18 U.S.C. § 2241(c), makes it illegal for a defendant to "knowingly engage[] in a sexual act with another person who has not attained the age of 12 years." The second statute, codified at 18 U.S.C. § 2243(a), specifies:

---

[4]Congress has since amended the three statutes in ways not relevant to this case. See, e.g., Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, §§ 205-07, 120 Stat. 587, 613-15 (increasing penalties under each statute).

(a) **Of a minor.**—Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in a sexual act with another person who—

> (1) has attained the age of 12 years but has not attained the age of 16 years; and

> (2) is at least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

A side-by-side comparison of sections 2241(c), 2242(2), and 2243(a) illustrates the similarity between these three statutes and their comparable linguistic structure:

| § 2241(c) | § 2242(2) | § 2243(a) |
|---|---|---|
| Whoever, in the special maritime and territorial jurisdiction of the United States . . . | | |
| knowingly | knowingly— . . . | knowingly |
| engages in a sexual act with another person | | |
| who has not attained the age of 12 years . . . | if that other person is—<br><br>(A) incapable of appraising the nature of the conduct; or<br><br>(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act; | who—<br><br>(1) has attained the age of 12 years but has not attained the age of 16 years; and<br><br>(2) is at least four years younger than the person so engaging; |
| or attempts to do so, shall be [subject to differing punishments]. | | |

§ 2241(c); § 2242(2); § 2243(a).

Significantly, both section 2241 and section 2243 include provisions that explicitly narrow the mens rea requirement. Section 2241 specifies that "the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years." § 2241(d). Section 2243 provides:

> (d) **State of Mind Proof Requirement.**—In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew—
>
> > (1) the age of the other person engaging in the sexual act; or
> >
> > (2) that the requisite age difference existed between the persons so engaging.

§ 2243(d). Section 2242, however, contains no affirmative language relieving the government of its burden to prove the defendant's knowledge. See § 2242.

The Supreme Court has recognized a general rule of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Rodriguez v. United States, 480 U.S. 522, 525 (1987) (internal quotation and alteration marks omitted). Here, all three statutes included in the same Act make it illegal for a defendant to "knowingly" engage in certain "sexual act[s]." Sections 2241 and 2243 explicitly limit the application of "knowingly," while section 2242 does not. Thus, reading section 2242(2) in the broader context of the Act, and applying Rodriguez's presumption that "disparate inclusion or exclusion" of statutory language is intentional, Rodriguez, 480 U.S. at 525, reinforces the conclusion that "knowingly"

in section 2242(2) applies to the victim-incapacity element of the offense.[5] See also Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2717-18 (2010) (rejecting interpretation of statute as "untenable in light of the sections immediately surrounding" it because "Congress did not import the intent language of those provisions" into the statute at issue); Hui v. Castaneda, 559 U.S. 799, 807 (2010) (noting that "explicit exception" in one statute was "powerful evidence" that similar statutes did not "imply such an exception"); Northcross v. Bd. of Educ., 412 U.S. 427, 428 (1973) (noting that "similarity of language" in two different statutes was "strong indication that the two statutes should be interpreted" the same).

Moreover, interpreting the knowledge requirement in section 2242(2) to extend only to knowledge of the sexual act would raise interpretive concerns with sections 2241 and 2243. As discussed above, Rodriguez instructs that sections 2241(c), 2242(2), and 2243(a) should be read together. If section 2242(2)'s knowledge requirement were construed to apply only to knowledge of the sexual act, then this same construction logically should apply to the knowledge requirement in sections 2241(c) and 2243(a). Doing so, however, would render superfluous sections 2241(d) and 2243(d), both of which explicitly narrow the respective statutes' knowledge requirements. This would run afoul of "the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute." Bennett v. Spear, 520 U.S. 154, 173 (1997) (internal quotation and alteration marks omitted); cf. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 58 (2007) (recognizing "the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form"); Albernaz v. United States, 450 U.S. 333,

---

[5] It is true that section 2243 creates an affirmative defense for a defendant who "reasonably believed that the other person had attained the age of 16 years," while section 2242(2) does not mention affirmative defenses. Compare § 2243(c), with § 2242(2). We do not find this distinction significant, however, in light of the fact that section 2241 does not mention affirmative defenses but still explicitly limits the mens rea requirement. See § 2241.

-10-

341 (1981) ("Congress is predominately a lawyer's body, and it is appropriate for us to assume that our elected representatives know the law." (internal quotation marks, alteration marks, and citations omitted)).

In summary, Staples and Flores-Figueroa create a presumption that "knowingly" in section 2242(2) requires a defendant to know the victim was "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act," § 2242(2). See Flores-Figueroa, 556 U.S. at 652; Staples, 511 U.S. at 606. Flores-Figueroa instructs that this presumption can be rebutted where the "context" or "background circumstances" of a statute lead to a different reading. See Flores-Figueroa, 556 U.S. at 652. Here, however, looking at the broader statutory context reinforces this presumption. Sections 2241 and 2243, passed into law as part of the same Act, include provisions explicitly limiting those statutes' mens rea requirements, and we presume that Congress intentionally omitted similar limiting language from section 2242. See Humanitarian Law Project, 130 S. Ct. at 2717-18; Hui, 559 U.S. at 807; Rodriguez, 480 U.S. at 525. Moreover, adopting a narrower construction of the knowledge requirement in section 2242(2) would create interpretative problems with sections 2241 and 2243, since it would render superfluous the provisions of those two statutes that place limits on the reach of "knowingly." See Bennett, 520 U.S. at 173. Thus, looking at the language of the statute and applying settled rules of statutory construction compels the conclusion that "knowingly" in section 2242(2) applies to each element of the offense.

Although the above analysis conclusively resolves the question before us, we note that other rules of statutory construction would lead to the same conclusion. It is a "familiar principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Skilling v. United States, 130 S. Ct. 2896, 2932 (2010) (internal quotation marks omitted). Moreover, the Supreme Court has stated that "where, as here, dispensing with mens rea would require the defendant to

-11-

have knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a mens rea requirement." Staples, 511 U.S. at 618-19. Knowingly "engag[ing] in a sexual act with another person," § 2242(2), is not inherently criminal under federal law, barring some other attendant circumstance. Defendants convicted under section 2242(2) are subject to "imprison[ment] for any term of years or for life." Id. Thus, even if the rules of statutory construction discussed above left any doubt about the reach of "knowingly" in section 2242(2), the rule of lenity and the potentially harsh penalty of life imprisonment would tip the balance in favor of construing "knowingly" to apply to the victim-incapacity element of the statute.

Furthermore, while we do not base our conclusion regarding the statute's construction on legislative history, we note that the legislative history also leads to the same construction. The House Report issued by the Judiciary Committee stated that the purpose of the Sexual Abuse Act of 1986 was to "modernize and reform Federal rape statutes." H.R. Rep. No. 99-594, at 6 (1986). In discussing the provisions of sections 2241 and 2243 that explicitly limit those sections' knowledge requirements, the House Report states that without these provisions, "the government would have had to prove that the defendant knew that a victim was less than 12 years old, since the state of mind required for the conduct—knowing—is also required for the circumstance of the victim's age." Id. at 15 n.59 (discussing knowledge requirement in section 2241); see also id. at 18 n.69 (discussing knowledge requirement in section 2243 and referencing footnote 59). The House Report shows that Congress understood the knowledge requirement in sections 2241 and 2243 to attach, absent a limiting provision, to the circumstance of the victim's age. Notably, although Congress drafted the statutes "broadly to cover the widest possible variety of sexual abuse," id. at 12, Congress did not mention that it intended to make section 2242(2) a strict liability crime, nor did it draft provisions limiting the reach of "knowingly" in section 2242(2). In short, the legislative history shows that Congress

-12-

understood the knowledge requirement in section 2242(2) to attach to the victim's incapacity or inability to consent.

The dissent objects to this opinion on three principal grounds: its take on the best grammatical reading of section 2242(2); its view of public policy; and the novel assertion that cases in which the issue before us was not raised, argued, discussed, or decided should inform our analysis. None of these bases withstand fair examination.

First, the dissent offers its own reading of section 2242(2) and concludes that under the structure of the statute "'knowingly' belongs to and modifies [only] the words 'engages' and 'attempts.'" See post at 37. This analysis begins with error because the dissent fails to acknowledge the Supreme Court's most recent articulation of the relevant rules of statutory construction in Flores-Figueroa which requires us to presume that the mens rea that introduces the elements of a crime applies to each element. See Flores-Figueroa, 556 U.S. at 652; id. at 660 (Alito, J., concurring) ("I think it is fair to begin with a general presumption that the specified mens rea applies to all the elements of an offense, but it must be recognized that there are instances in which context may well rebut that presumption."). Furthermore, instead of interpreting the statutory text in the manner prescribed by the Supreme Court, the dissent misreads the majority's opinion as "add[ing] an element of the offense that is not indicated by the congressional text." See post at 38. This is simply not the case. We are not adding a mens rea requirement where one is not found; rather we are following the instruction of the Supreme Court and presuming the mens rea requirement found in the congressional text "appl[ies] . . . to each element" that follows because that presumption is not rebutted. See Flores-Figueroa, 556 U.S. at 652.

The dissent further argues that this opinion is "inconsistent with the policies identified in the principal legislative report concerning the Sexual Abuse Act of 1986." See post at 45. Specifically, the dissent focuses on studies discussing the

-13-

frequency of sexual abuse suffered by Native American women and on the number of cases this court and district courts in this circuit have addressed under section 2242(2). No one could be unsympathetic to the circumstances addressed in the legislative report or in individual prosecutions. However, individual public policy judgments are no substitute for the rule of law and the statutory language that, under the directions of Flores-Figueroa and Staples, mandate us to presume the knowledge mens rea applies to all of the elements of section 2242(2). See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984) (holding when "the intent of Congress is clear [from the statutory text], that is the end of the matter").

Third, the dissent refers to unidentified district court cases along with selected appeals to our court involving defendants accused of violating section 2242(2) as supporting "a longstanding assumption" and an "accepted understanding" that the knowledge requirement of section 2242(2) does not apply to the victim's incapacity. As acknowledged by the dissent, however, the issue before us was not argued or decided in these cases, and thus, it is axiomatic that they provide absolutely no support for the dissent's position. See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37-38 (1952) (stating that a prior decision's implicit resolution of an issue that was not "raised in briefs or argument nor discussed in the opinion of the Court" is "not a binding precedent"); Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); Streu v. Dormire, 557 F.3d 960, 964 (8th Cir. 2009) ("[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel.").

Finally, we recognize that "sex crimes committed against the vulnerable, such as an unconscious or intoxicated individual, are particularly egregious and dehumanizing." United States v. Riley, 183 F.3d 1155, 1160 (9th Cir. 1999). The harm experienced by victims is not alleviated where assailants are acquitted based on

claims that they did not know the victims were incapacitated. However, "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." X-Citement Video, 513 U.S. at 72. Furthermore, reading section 2242(2) in the broader context of the Sexual Abuse Act of 1986 reinforces this presumption and compels the conclusion that section 2242(2) requires the government to prove that a defendant not only knew he or she was "engag[ing] in a sexual act with another person," but also that the defendant knew the other person was "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." § 2242(2). Even if we harbored doubt about this construction due to the egregious nature of sexual abuse crimes, which we do not, the rule of lenity, the harsh penalties associated with the offense, and the legislative history would all tip the balance in favor of this construction.

Thus, upon de novo review, we conclude that the district court's failure to give Bruguier's instruction deprived him of his defense that he did not know Stricker was incapacitated or otherwise unable to deny consent. Consequently, we reverse his conviction under section 2242(2) and remand for a new trial on this count.

B.

Bruguier next argues the evidence was insufficient to convict him of burglary under S.D. Codified Laws § 22-32-1. He preserved this issue by moving for a judgment of acquittal. See United States v. May, 476 F.3d 638, 640 (8th Cir. 2007). Thus, "[w]e review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Gray, 700 F.3d 377, 378 (8th Cir. 2012) (internal quotation marks omitted). "We reverse only if no reasonable jury could have found guilt beyond a reasonable doubt." Id. (internal quotation marks omitted).

The only argument Bruguier advances concerning his burglary conviction is that the evidence was insufficient to prove he entered or remained in T.S.'s home with the specific intent to commit sexual assault. See § 22-32-1 (establishing elements of first degree burglary). He asserts that the evidence, at best, showed he acted on impulse when he assaulted T.S., not that he ever formed the specific intent to rape her. However, T.S. testified that Bruguier entered her room while she was sleeping, asked her why she was dating her boyfriend instead of him, and then hit her on the head before raping her. Viewed in the light most favorable to the government, this evidence certainly was sufficient for a reasonable jury to infer that Bruguier entered or remained in T.S.'s home with the specific intent to commit sexual assault. See State v. Martin, 493 N.W.2d 223, 228-29 (S.D. 1992) (upholding jury's factual determination that defendant possessed specific intent to support burglary conviction). Thus, we affirm Bruguier's burglary conviction.

C.

Bruguier lastly challenges his sentence, arguing the district court incorrectly calculated his sentencing guideline range. We need not reach his sentencing arguments, however. Because the district court based its sentencing package on all four of Bruguier's convictions, one of which we are reversing, we vacate his sentence and remand for re-sentencing. Cf. United States v. Evans, 314 F.3d 329, 332 (8th Cir. 2002) ("Under the Guidelines, a multi-count sentence is a package and severing part of the total sentence usually will unbundle it." (internal quotation marks omitted)).

III.

Accordingly, we reverse Bruguier's conviction for sexual abuse under section 2242(2) and remand for a new trial on that count. We consequently vacate his sentence and remand for re-sentencing. We affirm his burglary conviction.

-16-

RILEY, Chief Judge, with whom BRIGHT, Circuit Judge, joins, concurring.

Although the circumstances for the victim are tragic and evoke sympathy, I must follow the law. Thus, I concur completely in the court's opinion. I write separately to emphasize my view that the statute is not ambiguous, and, to the extent it is relevant, the legislative history decisively demonstrates the government was required to prove Bruguier knew the victim was "(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, th[e] sexual act." 18 U.S.C. § 2242(2).

## A.    Statutory Language

This case hinges on routine statutory construction.[6] "As in all such cases, we begin by analyzing the statutory language." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, ___, 130 S. Ct. 2149, 2156 (2010). "If the statute is clear and unambiguous 'that is the end of the matter, for the court . . . must give effect to the unambiguously expressed intent of Congress.'" Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368 (1986) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)). Because "statutory language must always be read in its proper context," McCarthy v. Bronson, 500 U.S. 136, 139 (1991), whether a statute is unambiguous depends not only on "the particular statutory language at issue," but also on "the language and design of the statute as a whole," K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988); see also Crandon v. United States, 494 U.S. 152, 158 (1990). A contextual reading of the

_____

[6]As Judge Richard S. Arnold said in his elegantly straightforward way, we judges are not empowered to "make law because we think a certain rule of law is a good thing." Richard S. Arnold, Address at the Eighth Circuit Judicial Conference: The Art of Judging (Aug. 8, 2002), available at http://www.youtube.com/watch?v=Z_XO4FadiiE. Judges must not "usurp policy judgments that Congress has reserved for itself," Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 508 (1982).

-17-

"statute as a whole" demonstrates the knowledge requirement in § 2242(2) unambiguously applies to the circumstance of the victim's incapacity.

### 1.    The Act

Congress passed § 2242(2) as part of the Sexual Abuse Act of 1986 (Act), Pub. L. No. 99–646, § 87, 100 Stat. 3592, 3620 (1986) (codified as amended at 18 U.S.C. §§ 2241-44, 2246).  The Act added three parallel sections to Title 18: § 2241 (aggravated sexual abuse), § 2242 (sexual abuse), and § 2243 (sexual abuse of a minor or ward).  See § 87, 100 Stat. at 3620-22.  The court's majority opinion demonstrates that these three sections share the same linguistic design.

Given the three sections' shared language and structure, the term "knowingly"—absent limiting language—must have the same basic reach in § 2242(2) as it does in the two sections that bookend it.  See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. ___, ___, 133 S. Ct. 2517, 2529 (2013) ("Just as Congress' choice of words is presumed to be deliberate, so too are its structural choices."); Comm'r v. Lundy, 516 U.S. 235, 250 (1996) ("The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation omitted));[7] cf. Clark v. Martinez, 543 U.S. 371, 386 (2005) (refusing to "establish within our jurisprudence . . . the dangerous principle that judges can give the same statutory text different meanings in different cases").

_____

[7]This intratextual method of construction dates back to two of the Supreme Court's earliest and most celebrated cases.  See Akhil Reed Amar, Intratextualism, 112 Harv. L. Rev. 747, 755-63 (1999) (analyzing the use of intratextualism by Chief Justice Marshall in McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819) and Justice Story in Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304 (1816)).

Statutory context also compels the conclusion that the term "knowingly," absent specific limiting language, applies not only to the conduct element of each of the three crimes (i.e., "engag[ing] in a sexual act with another person"), but to the circumstances subsequently listed in each section: the other person's age in § 2241(c), incapacity in § 2242(2), and age plus age difference in § 2243(a). Congress expressed this point unequivocally by adding specific limiting language to § 2241 and § 2243, but *not* to § 2242. See, e.g., Lindh v. Murphy, 521 U.S. 320, 330 (1997) ("[N]egative implications raised by disparate provisions are strongest when the portions of a statute treated differently . . . were being considered simultaneously when the language raising the implication was inserted.").

To § 2241, Congress added an affirmative statement that engaging in a sexual act with a child under the age of 12 is a strict liability crime:

> (d) State of Mind Proof Requirement.—
> In a prosecution under subsection (c) of this section, the Government *need not prove that the defendant knew* that the other person engaging in the sexual act had not attained the age of 12 years.

§ 87, 100 Stat. at 3621 (codified at 18 U.S.C. § 2241(d)) (emphasis added).

In § 2243, Congress affirmatively relieved the government of the burden of proving the defendant's knowledge of the other person's age and age difference while creating an affirmative defense available to a defendant who reasonably believed the other person was old enough:

> (c) Defenses.—(1) In a prosecution under subsection (a) of this section, it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant *reasonably believed* that the other person had attained the age of 16 years.
>          . . . .

(d) State of Mind Proof Requirement.—In a prosecution under subsection (a) of this section, the Government *need not prove that the defendant knew*—

> (1) the age of the other person engaging in the sexual act; or
> (2) that the requisite age difference existed between the persons so engaging.

§ 87, 100 Stat. at 3621-22 (codified at 18 U.S.C. § 2243(c)-(d)) (emphasis added).

Yet Congress added no affirmative language to relieve the government of its burden to prove the defendant's knowledge in § 2242(2). Given "[t]he interrelationship and close proximity of these provisions of the statute," Lundy, 516 U.S. at 250, the absence of any language limiting the reach of the term "knowingly" in § 2242(2) makes the text unmistakably clear: § 2242(2) is not a strict liability crime. See, e.g., Field v. Mans, 516 U.S. 59, 75 (1997) ("The more apparently deliberate the contrast, the stronger the inference, as applied, for example, to contrasting statutory sections originally enacted simultaneously in relevant respects."). "Nothing, indeed, but a different intent explains the different treatment" of § 2242(2) and §§ 2241 and 2243. Lindh, 521 U.S. at 329.

## 2. Congressional Intent

The "immediately surrounding" sections show that if Congress intended to make § 2242(2) a strict liability crime, Congress knew exactly how to do so. Holder v. Humanitarian Law Project, 561 U.S. ___, ___, 130 S. Ct. 2705, 2717 (2010); see, e.g., Medellín v. Texas, 552 U.S. 491, 522 (2008) ("Such language demonstrates that Congress knows how to [achieve a particular result] when it desires such a result."); Jama v. ICE, 543 U.S. 335, 341 (2005); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 57 (1987) ("Congress has demonstrated in yet other statutory provisions that it knows how to avoid [a result] by using language that explicitly [requires a different result].").

-20-

Elsewhere in the same statute at issue here, Congress affirmatively created a strict liability crime—§ 2241(c)—and a quasi-strict liability crime—§ 2243(a). Sections 2241(d) and 2243(d) lead to the inescapable conclusion that "Congress kn[ew] how to say ['strict liability'] when it mean[t] to," City of Milwaukee v. Illinois & Michigan, 451 U.S. 304, 329 n.22 (1981), and Congress did not mean to say so in § 2242(2).

It is inconceivable that Congress meant to create a strict liability crime *by omission* in one section of a statute when Congress affirmatively created strict liability crimes *by inclusion* in the immediately preceding and immediately following sections of the same statute. "If Congress had desired to make" § 2242(2) a strict liability crime, "it could have used language similar to that which it invoked in" § 2241(d). Nassar, 570 U.S. at ___, 133 S. Ct. at 2529. "Or, it could have inserted" provisions similar to § 2243(c) and (d) to make § 2242(2) a quasi-strict liability crime. Id. "But in writing" § 2242(2), "Congress did neither of those things, and '[w]e must give effect to Congress' choice.'" Id. (alteration in original) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 n.3 (2009)).

### 3. Statutory Background

Looming large over Congress' drafting of the Act was the Supreme Court's "landmark opinion in Morissette v. United States, 342 U.S. 246 (1952)," in which "the Court used the background presumption of evil intent to conclude that the term 'knowingly'" applied well beyond its "isolated position" in the statute at issue. United States v. X-Citement Video, Inc., 513 U.S. 64, 70 (1994). Just eighteen months before Congress passed the Act, the Supreme Court in Liparota v. United States, 471 U.S. 419 (1985), reminded Congress of Morissette's "background presumption." There, the Supreme Court considered whether the term "knowingly" applied to the phrase "in any manner not authorized by [the statute]" in a federal food stamp statute making it a crime to "knowingly use[], transfer[], acquire[], alter[], or possess[] coupons or authorization cards *in any manner not authorized by [the*

-21-

*statute]* or the regulations." Id. at 420-21 (emphasis added) (last alteration in original) (quotation omitted). "The Court held that it did, despite the legal cliche 'ignorance of the law is no excuse.'" Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009) (citing Liparota, 471 U.S. at 433).

Legislating amid this backdrop, Congress obviously knew that to make § 2242(2) a strict liability statute would require affirmative language—exactly the sort of affirmative language Congress used in §§ 2241(d) and 2243(d), but did *not* add to § 2242. See United States v. U.S. Gypsum Co., 438 U.S. 422, 438 (1978) ("Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement."). In accordance with "the interpretive assumption that Congress knows how [the courts] construe statutes and expects [the courts] to run true to form," Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007), we must reject the government's request to construe § 2242(2) in a way Congress could not reasonably expect and evidently did not intend.

### 4.    Grammar

The dissent sidesteps these "conventional doctrines of statutory interpretation," Lamie v. U.S. Tr., 540 U.S. 526, 538 (2004), and builds its case on what it terms "the natural grammatical reading of § 2242(2)," post at 38. The dissent's "natural" reading is not so natural. First, the dissent's eisegesis of X-Citement Video ignores how the Supreme Court itself has interpreted that case. In Flores-Figueroa, for example, the Supreme Court (1) referred to "[t]he language in issue in X-Citement Video" as relatively "ambiguous"; (2) cited Justice Stevens' X-Citement Video concurrence, which said "the normal, commonsense reading" is to apply a criminal statute's knowledge requirement to every element following the word "knowingly," 513 U.S. at 79; and (3) considered X-Citement Video's holding (as opposed to the few lines of contrary dicta on which the dissent relies) to be "fully consistent with . . . ordinary English usage." Flores-Figueroa, 556 U.S. at 652-53.

Second, the dissent's reliance on "interruptive punctuation," post at 37, is misplaced. As the Supreme Court and our court have said "[o]ver and over," U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993), "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." United States v. Heirs of Boisdoré, 49 U.S. (8 How.) 113, 122 (1850) (quoted most recently in Maracich v. Spears, 570 U.S. ___, ___, 133 S. Ct. 2191, 2203 (2013) and United States v. Jungers, 702 F.3d 1066, 1069-70 (8th Cir. 2013)). "No more than isolated words or sentences is punctuation alone a reliable guide for discovery of a statute's meaning." U.S. Nat'l Bank of Or., 508 U.S. at 455.

Considering a statute in which "knowingly" was separated by the same "interruptive punctuation"—the dash—at issue here and in X-Citement Video, the Supreme Court observed "[t]his is not a case where grammar or structure enables the challenged provision or some of its parts to be read apart from the 'knowingly' requirement. Here, 'knowingly' introduces the challenged provision itself, making clear that it applies to that provision *in its entirety*."[8] United States v. Williams, 553 U.S. 285, 294 (2008) (emphasis added) (analyzing 18 U.S.C. § 2252A(a)(3)).

Even if the dissent's grammatical analysis were correct, that would not outweigh the unambiguous contextual meaning of § 2242(2). See McCarthy, 500 U.S. at 139. Grammar provides clues, sometimes decisive, to what language means, but ungrammatical statements can be unambiguous and grammatical statements ambiguous—depending on context. See, e.g., Verizon Commc'ns, Inc. v. FCC, 535

---

[8]The dissent has no authoritative answer to Williams, which makes clear that interruptive dashes do not provide a grammatical or structural basis for reading a subsequent provision apart from the word "knowingly" introducing the entire provision. Instead, the dissent in this case quotes the dissent in X-Citement Video for a grammatical proposition the Supreme Court dismissed in X-Citement Video and rejected in Flores-Figueroa. See post at 37-38.

U.S. 467, 533 (2002) ("[W]hether [language] is plain . . . is a question of context as much as grammar."). Section 2242(2) might be "awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue," Lamie, 450 U.S. at 534. We are not now, nor have we ever been, "a panel of grammarians." Flora v. United States, 362 U.S. 145, 150 (1960); see also, e.g., Ex parte Bollman, 8 U.S. (4 Cranch) 75, 95 (1807) (Marshall, C.J.) ("[S]trict grammatical construction . . . . is not entirely without its influence; but the sound construction which the court thinks it safer to adopt, is, that the true sense of the words is to be determined by the nature of the provision, and by the context."). Reversing the Third Circuit's decision in United States v. Palma-Ruedas, 121 F.3d 841 (3d Cir. 1997), the Supreme Court explained formal grammatical analysis "cannot be applied rigidly, to the exclusion of other relevant statutory language." United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999). As then-Circuit Judge Alito warned the Third Circuit in the Palma-Ruedas case, "[r]ather than relying on grammatical arcana, [courts] should . . . look at the substance of the statutes in question." Palma-Ruedas, 121 F.3d at 865 (Alito, J., dissenting).

Heeding this prescient warning by applying "settled principles of statutory construction," Carcieri v. Salazar, 555 U.S. 379, 387 (2009), our court properly rejects the dissent's ad hoc grammatical analysis. See, e.g., Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). Because substance, context, and structure establish that § 2242(2) "is plain and unambiguous[,] . . . . we must apply the statute according to its terms." Carcieri, 555 U.S. at 387.

B.    Legislative History

Casting aside textual context and structure, the dissent invokes legislative history and relies on extra-statutory ephemera to reach a reading inconsistent with the

-24-

text of the Act.  See post at 42-45 (quoting H.R. 4876, 98th Cong. § 2 (1984); Sexual Abuse Act of 1986: Hearing Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary (1986 Hearing), 99th Cong. 15, 41(1986); H.R. Rep. No. 99–594 (1986)).  The dissent asserts these sources "show[] that the 'knowingly' requirement in § 2242(2) was not intended to apply to the defendant's awareness of the victim's incapacity." Id. at 42.  Even if that were true, "the authoritative statement is the statutory text, not the legislative history."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005).[9]

It is especially objectionable to rely on legislative imponderables to "mak[e] criminal what the text would otherwise permit."  Flores-Figueroa, 556 U.S. at 658 (Scalia, J., concurring).  A moment's reflection reveals the fundamental unfairness of imprisoning anyone based on stray utterances dug from the recesses of the Congressional Record.  After all, "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  United States v. Santos, 553 U.S. 507, 514 (2008).  "This venerable rule," id., "ensures *fair warning*."  United States v. Lanier, 520 U.S. 259, 266 (1997) (emphasis added).  If the government must resort to "the statement of a single Member of Congress or an unvoted-upon (and for all we know unread) Committee Report" to convince a court that a statute criminalizes certain conduct, Flores-Figueroa, 556 U.S. at 658 (Scalia, J., concurring), the statute cannot give anyone—except perhaps the lone Member of Congress or the committee staffers who wrote the report—"fair warning," Lanier, 520 U.S. at 266.

Regardless, a brief foray into the history of § 2242(2), not to mention a more careful reading of the dissent's sources, shows the dissent's reliance on legislative

[9]As Justice Oliver Wendell Holmes taught, judges "do not inquire what the legislature meant; we ask only what the statute means."  Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 Harv. L. Rev. 417, 419 (1899).

-25-

history is misplaced. Indeed, this is the rare case where legislative history, which is "usual[ly] inconclusive," Flores-Figueroa, 556 U.S. at 658 (Scalia, J., concurring), provides a clear answer: Congress intended to require proof of a defendant's knowledge of the victim's incapacity.

### 1.    Drafting History

One of the principal sponsors of the Act testified in early House committee hearings that § 2242(2) was intended to make it a crime to "engag[e] in a sexual act with persons *known by the offender to be* incapable of appraising the nature of such conduct: those who are physically incapable of declining participation in or communicating unwillingness to engage in the sexual act." Federal Rape Law Reform: Hearings Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary (Hearings), 98th Cong. 80 (1986) (statement of Rep. Steny Hoyer (Hoyer statement)) (emphasis added). Explaining the legislative intent behind 18 U.S.C. § 2244(a) (making it a crime to "knowingly engage[] in or cause[] sexual contact with or by another person, if to do so would violate— . . . (2) section 2242 . . . had the sexual contact been a sexual act"), Representative Hoyer testified that § 2244(a) would protect "those who are *known by the offender* to be unable to appraise the nature of [the sexual] conduct whether by reason of mental disease or defect or of intoxication." Hearings, supra, at 80 (Hoyer statement) (emphasis added).

An early draft of the Act would even have inserted the phrase "known by the offender to be" into the statutory text itself. See H.R. 4876, 99th Cong. § 2. But Congress realized that phrase was redundant because § 2242(2) introduces all the elements and circumstances of the offense with the term "knowingly."[10] Congress

---

[10]As with the dissent's context-free reading of § 2242(2), the dissent takes a limited look at the legislative history and sees a "stark change" in the various testimonies and statements given by Representative Hoyer in the run-up to the Act's passage by Congress. Post at 42-45. Representative Hoyer's testimony in 1984

drafted the Act "employing the format, conventions, and techniques used in drafting the Criminal Code Revision Act of 1980 [(CCRA)] reported by th[e] [House Judiciary] Committee in the 96th Congress." H.R. Rep. No. 99–594, at 13 & n.51. Explaining the Act's drafting process, the House referenced the CCRA committee report: "[I]n the *absence of language to the contrary*, a *knowing* state of mind will be required for conduct, results, and *circumstances*." H.R. Rep. No. 96–1396, at 35 (1980) (emphasis added); see H.R. Rep. No. 99–594, at 15 n.59 (citing H.R. Rep. No. 96–1396, at 35).

Consistent with its understanding "that the state of mind required for conduct w[ould] apply to *circumstances* and results *unless otherwise specified*," H.R. Rep. No. 96–1396, at 34 (emphasis added), Congress specified otherwise in §§ 2241(d) and 2243(d). Congress was not alone in its belief that a specific exception was required to limit the knowledge requirement. See H.R. Rep. No. 99–594, at 15 n.59, 18 n.69; cf. U.S. Gypsum, 438 U.S. at 438 (requiring "far more than . . . simple omission . . . to justify dispensing with an intent requirement"). The Department of Justice (Department) thought the same thing. See 1986 Hearing, supra, at 37, 38-39, 44 (statement of Mark M. Richard, Deputy Assistant Att'y Gen. (Richard statement)). Yet Congress did not specify otherwise in § 2242(2). The resulting conclusion is unavoidable: § 2242(2) requires proof of knowledge because "the state of mind required for the conduct—knowing—is also required for the circumstance of the

_____

(actually published and used by Congress in 1986), focused on the intent underlying the Act. See Hearings, supra, at 67-82. His later statement, quoted by the dissent, did not address § 2242(2)'s mens rea requirement at all. See 1986 Hearing, supra, at 15. Representative Hoyer discussed all substantive changes to the Act in exhaustive detail. See id. at 3-21. Nowhere did he say § 2242(2) would impose strict liability—in marked contrast to his discussion of § 2243. See id. at 16. In context, it is obvious Representative Hoyer considered the deletion of "known by the offender" to be nothing more than a non-substantive change to conform to the Act's drafting format.

victim's" incapacity.  H.R. Rep. No. 99–594, at 15 n.59; see H.R. Rep. No. 96–1396, at 35.

### 2.    Government's Views

This conclusion draws further support from the government's position at the time Congress passed the Act.[11]   In initial committee hearings, an official "present[ing] the views of the Department" testified that § 2242(2) would make it a crime to "engage[] in a sexual act with a person *known by the offender* to be incapable of appraising the nature of the conduct or physically incapable of declining participation in it."  Hearings, supra, at 95 (statement of Victoria Toensing, Deputy Assistant Att'y Gen.) (emphasis added).   Although this official testified the Department recommended numerous amendments to the proposed legislation—including a reasonable belief defense in § 2243—neither she nor any other Department official ever expressed concern over the knowledge requirement in § 2242(2).  See id. at 97; see also 1986 Hearing, supra, at 37-44 (Richard statement).

To the contrary, testifying about the exact language used in the statute—after Congress, realizing the phrase was redundant, deleted "known by the offender to be" from a prior draft—another official "present[ing] the views of the Department" explained that § 2242(2) criminalized "*knowingly* engaging in a sexual act with a person *who is* incapable of appraising the nature of the conduct or physically incapable of declining participation in it."  1986 Hearing, supra, at 41 (Richard statement) (emphasis added).  Even by the dissent's "natural grammatical reading," this official statement recognizes the knowledge requirement applies to the circumstance of the victim's incapacity "since no independent clauses or interruptive

---

[11]Yet the government now asserts "[t]he legislative history regarding the statute does not provide a clear answer to the *mens rea* question presented here."  If not duplicitous, that assertion is at least an example of why it is improper to criminalize conduct based on needles hidden in legislative history haystacks: those historical needles are hard for the government, let alone a criminal defendant, to find.

punctuation marks indicate otherwise."[12]  Post at 44.  In contrast, the Department official described § 2241(c) and § 2243(a) *without* a similar knowledge requirement, recognizing that these crimes would not require the government to prove knowledge. See 1986 Hearing, supra, at 41 (Richard statement) (describing §§ 2241(c) and 2243(a) as making it a crime to "engag[e] in a sexual act with a person under twelve years of age" and to "engage[e] in a sexual act with a minor who is at least twelve but under sixteen years of age if the offender is at least four years older than the minor"). When Congress passed the Act, the government correctly understood that the knowledge requirement continued past the "interruptive punctuation" on which the government and dissent today construct their case.

### 3.  Legislative Policies

Congressional intent likewise reinforces our court's reading of § 2242(2).  The genesis of the Act was Congress' recognition that federal law was becoming increasingly inconsistent with state law.  See Hearings, supra, at 3-4 (statement of Rep. Robert Carr (Carr statement)).  While federal law still relied on an obsolete definition of rape, by 1984 thirty-eight states had "reformulate[ed] [rape] into a crime of sexual assault."  Id. at 4.  Michigan was the first state to do so, and Congress, finding Michigan's reform effort particularly instructive, went so far as to hold a hearing in that state.  See id. at 1, 4.  Members of Congress worried that antiquated federal laws and modernized state laws criminalized different conduct, an imbalance of particular concern in Indian country.  See, e.g., id. at 5; id. at 68 (Hoyer statement); id. at 71 (statement of Rep. Bobbi Fiedler).

Although the Act's drafters considered the legal reforms of thirty-eight states, Congress looked to three states in particular: California, Maryland, and Michigan.

---

[12]As the Department submitted this statement in writing, one can hardly argue the absence of punctuation was a mere oversight or transcription error.  See 1986 Hearing, supra, at 37, 40-44 (Richard statement).

See, e.g., 1986 Hearing, supra, at 6 (statement of Rep. Steny Hoyer); id. at 35 (statement of Rep. Bobbi Fiedler); Hearing, supra, at 3-4 (Carr statement) (describing Rep. Hoyer's effort to "take the Maryland experience into Federal law" and his effort to "do[] the same thing" with Michigan's reforms). None of these states imposed strict liability in their state analogue to § 2242(2) at the time, nor do they today.[13]

These states hardly were unique. Contrary to the dissent's selective quotation of Morissette, our law has *not* "long recognized an exception from traditional mens rea requirements for 'sex offenses, such as rape,' in which the victim's *status* . . . is determinative." Post at 39 (emphasis added) (quoting 342 U.S. at 251 n.8). Morissette actually explains that "sex offenses, such as rape, in which the victim's *actual age*"—not status—"was determinative" are one of the "*few* exceptions" to the mens rea requirement which "took deep and early root in American soil" and "was so inherent in the idea of the offense that it required no statutory affirmation."[14] 342 U.S. at 251-52 & n.8 (emphasis added). In contrast to the narrow, statutory scienter

_____

[13] See Cal. Penal Code § 261(a)(4) ("Where a person is at the time unconscious of the nature of the act, and *this is known to the accused*" (emphasis added)); Cal. Penal Code app. § 261(4) (Deering 1986); Md. Code Ann., Crim. Law § 3-304(a)(2) ("[T]he person performing the act *knows or reasonably should know* that the victim is [incapacitated]" (emphasis added)); Md. Code Ann., art. 27, § 463(a)(2) (Michie 1982); Mich. Comp. Laws § 750.520d(1)(c) ("The actor *knows or has reason to know* that the victim is [incapacitated]" (emphasis added)); Act of July 24, 1983, No. 158, sec. 1, § 750.520d, 1983 Mich. Pub. Acts 475, 478.

[14] Disregarding this bedrock American tradition, and rewriting the statute, the dissent asserts that when faced with "two interpretations" of a criminal statute—one which imposes strict liability, the other which requires criminal intent—"the better view" is to opt for strict liability. Post at 41. This disturbing assertion is without precedent in our legal system. "The contention that an injury can amount to a crime only when inflicted by intention . . . . is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Morissette, 342 U.S. at 250.

exception for the historical crime of "statutory rape,"[15] there is no Anglo-American tradition of imposing strict liability for sexual activity with an intoxicated or even unconscious individual. See, e.g., R v. Camplin, (1845) 169 Eng. Rep. 163 (C.C.) 164, 1 Den. 89, 91 ("[T]he crime of rape is committed by violating a woman when she is in a state of insensibility . . . the accused *knowing* at that time that she is in that state." (emphasis added)); Model Penal Code § 213.1 & cmt. 5 (Official Draft and Revised Comments 1980) (requiring proof the perpetrator was "at least reckless with respect to the [victim's] unconsciousness"). Before Congress passed the Act, federal law did not even criminalize knowing sexual assault of an intoxicated victim, much less impose strict liability. See 18 U.S.C. § 2031 (repealed 1986); Williams v. United States, 327 U.S. 711, 715 (1946) (requiring "force by the offender and . . . an absence of consent by the victim").

Ignoring this context, the dissent emphasizes only that Congress wished to "'modernize and reform Federal rape statutes,'" post at 45 (quoting H.R. Rep. No. 99–594, at 6). The dissent assumes strict liability is the most "modern" way to tackle society's alarming rates of sexual assault. See post at 45-47. But Congress did not think so in 1986 when it enacted § 2242(2) and decided, in § 2243(c), to dilute the old federal rape law's strict liability.[16] Neither did Congress think so in 2011 when it

---

[15]This crime indeed originated in statutory, not common, law. See Benefit of Clergy Act, 1575, 18 Eliz. I c. 7 (Eng.), in 4 Statutes of the Realm 617, 618 (1819).

[16]Contrary to the dissent's survey of cases involving § 2242(2), there is no "accepted understanding" among district courts in our circuit or anywhere else for the proposition that § 2242(2) is a strict-liability crime. Post at 49. Notably, in United States v. Ford, No. 4:11-cr-40116-KES-1 (D.S.D.), aff'd 726 F.3d 1028 (8th Cir. 2013), the same judge who presided over Bruguier's trial decided—before either of the panel decisions in this case or United States v. Rouillard, 701 F.3d 861 (8th Cir. 2012) (vacated March 4, 2013)—that § 2242(2) was *not* a strict-liability crime.

The district court not only instructed the jury in Ford of the prosecution's burden to prove beyond a reasonable doubt that the defendant "*knew* that [the victim]

amended the Uniform Code of Military Justice to require actual or constructive knowledge. See National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112–81, § 541(a)(3), 125 Stat. 1298, 1404-05 (Dec. 31, 2011) (amending redesignated 10 U.S.C. § 920(b) to prohibit sexual acts "when the [perpetrator] *knows or reasonably should know* that the other person is [incapacitated]" (emphasis added)). Nor do the District of Columbia and the majority of states think so, including at least six of the seven states in our circuit, all of which have chosen not to make sexual activity with an intoxicated person a strict liability crime.[17]

---

was [incapacitated]" but also rejected the government's proposed strict-liability instruction that "[e]vidence that the rape victim was asleep, or intoxicated and drowsy, when the Defendant knowingly engaged in a sexual act with the victim, if proven beyond a reasonable doubt, is sufficient to support a finding of guilt." Final Jury Instructions, Ford, No. 4:11-cr-40116-KES-1 (D.S.D. July 18, 2012), ECF No. 69 (emphasis added); Refused Jury Instruction #5, Ford, No. 4:11-cr-40116-KES-1 (D.S.D. July 18, 2012), ECF No. 60.

Further "'illuminat[ing] the [legal] profession's understanding' of the law," post at 50 (quoting United States v. Ross, 465 U.S. 798, 819 (1982)), the jury in United States v. Peters, 277 F.3d 963 (7th Cir. 2002), was instructed that the government had to prove "that the Defendant . . . *knew* that [the victim] was [incapacitated]," id. at 967 (emphasis added).

[17]Most states do not impose criminal liability without either (1) actual knowledge, e.g., Alaska Stat. § 11.41.420(3) ("offender knows" victim's condition), or (2) constructive knowledge, e.g., Ariz. Rev. Stat. Ann. § 13-1401(5)(b) (victim's "condition is known or should have reasonably been known to the defendant"). See also D.C. Code § 22-3003(2). Some states place the burden of proof on the prosecution, e.g., Colo. Rev. Stat. § 18-3-402(1)(b); others make lack of knowledge an affirmative defense, e.g., Conn. Gen. Stat. § 53a-67(a).

No state in this circuit, except possibly Iowa whose highest court has not decided the question, imposes strict liability. See Ark. Code Ann. § 5-14-102(e); Minn. Stat. § 609.342, subd. 1(e)(ii); Mo. Rev. Stat. § 556.061(5)(b); Neb. Rev. Stat. § 28-319(1)(b); N.D. Cent. Code § 12.1-20-03(1)(c), (e); State v. Jones, 804 N.W.2d

Legislative history, to the extent it is relevant, confirms the court's unambiguous reading of § 2242(2).

## C.    Conclusion

The unambiguous text of the statute, confirmed by the legislative history, required the government to prove Bruguier knew the victim was incapacitated. To avoid the unpleasant consequences of the district court's failure to inform the jury of this requirement, the government "ask[s] us not to interpret" § 2242(2), "but to revise it." Holder, 561 U.S. at ___, 130 S. Ct. at 2718. This our court cannot do. See, e.g., Lamie, 540 U.S. at 538 ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."). "The remedy [the government seeks] lies with Congress and not with this Court. Congress may amend the statute; we may not." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 576 (1982).

Our court has no choice under the law but to reverse Bruguier's § 2242(2) conviction.

MURPHY, Circuit Judge, with whom BYE, COLLOTON, GRUENDER, and BENTON, Circuit Judges, join, concurring in part and dissenting in part.

From the time of the enactment of 18 U.S.C. § 2242(2) in 1986, until and after the panel opinion in United States v. Rouillard, 701 F.3d 861 (8th Cir. 2012), our

---

409, 414 (S.D. 2011). Thus, the court's opinion imposes no greater burden on Bruguier's federal prosecutors than South Dakota law would have imposed on state prosecutors if Bruguier's heinous act had occurred a few miles away under state jurisdiction rather than in Indian country. See Jones, 804 N.W.2d at 414 ("Because rape by intoxication is a serious felony and the Legislature has not indicated its clear intent to dispense with mens rea, [the state statute] must be read to include a knowledge element.").

court has consistently accepted jury instructions which required proof both that the defendant knowingly engaged in a sexual act and that the victim was an incapacitated person. When this case was in the district court, Judge Karen Schreier heard arguments from opposing counsel before deciding to give the jury that standard instruction. A review of our cases suggests that juries have had no trouble applying that instruction and reaching a fair result: nearly half of the defendants have been acquitted. I agree with the majority that the evidence is sufficient to support Bruguier's burglary conviction, but I respectfully dissent from its misinterpretation of the "knowingly" element in § 2242(2) which is contrary to the statute's plain text and misconstrues the legislative record.

I.

Bruguier was charged with two counts of aggravated sexual abuse and one count of attempted aggravated sexual abuse, 18 U.S.C. § 2241(a), sexual abuse of an incapacitated person, 18 U.S.C. § 2242(2), sexual abuse of a minor, 18 U.S.C. § 2243(a), and burglary, S.D. Codified Laws § 22–32–1. The jury found Bruguier guilty of aggravated sexual abuse, sexual abuse of an incapacitated person, sexual abuse of a minor, and burglary. It acquitted him of the other charges.

Bruguier's conviction under § 2242(2) was based on his rape of Crystal Stricker in January 2011. Sometime in the early morning hours Crystal returned home heavily intoxicated after drinking at several places. While she was talking with the sister of her boyfriend Mike Miller, Bruguier arrived at the house. Later, after Mike's sister left the room for "a couple minutes," she heard a "big boom." She rushed back to the living room where she found Crystal lying motionless on the floor with Bruguier "on top of her, pulling her pants down." She yelled for Mike, who came from the bedroom and saw Crystal "laying like she was knocked out." Mike testified at trial that Crystal's head was "slanted against the vent" and that her eyes were "open, but they were glossy red." Mike also observed that Crystal had semen between her legs

-34-

and that Bruguier's penis was erect. He had to shake Crystal to awaken her. A sexual assault exam of Crystal revealed vaginal bruising and semen matching Bruguier's DNA. Crystal testified that the rape made her feel "a lot of shame," and shortly afterward she was prescribed anxiety and sleeping medications and began seeing a sexual assault counselor.

The district court instructed the jury that to convict Bruguier of sexual assault of an incapacitated person under § 2242(2), the government had to prove beyond a reasonable doubt that "Bruguier did knowingly cause or attempt to cause Crystal Stricker to engage in a sexual act" and that Crystal "was physically incapable of declining participation in and communicating unwillingness to engage in that sexual act." After deliberating the jury convicted Bruguier of violating § 2242(2). Since the district court's jury instructions correctly stated the legal standard and elements required to convict Bruguier under § 2242(2), his conviction should be affirmed.

## II.

In interpreting a statute, we look first to its text. BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (plurality opinion). Section 2242(2) states that:

> Whoever . . . knowingly—
>
> (2) engages in a sexual act with another person if that other person is—
>
> > (A) incapable of appraising the nature of the conduct; or
> >
> > (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
>
> or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

§ 2242(2) (emphasis added).

## A.

Section § 2242(2) is composed of the adverb "knowingly" separated by a dash from two active verbs describing the defendant's acts, which are in turn separated by a dash from two subsidiary clauses which contain adjectives describing the victim's status. The Supreme Court has instructed that criminal statutes of this construction are "most natural[ly]" read such that "knowingly" modifies only the surrounding active verbs and not the separate subsidiary clauses. United States v. X-Citement Video, Inc., 513 U.S. 64, 68 (1994).

In X-Citement Video, the Supreme Court considered a structurally similar statute, 18 U.S.C. § 2252, which criminalizes the distribution of child pornography. 513 U.S. at 67–68. Section 2252 states that any person shall be subject to punishment "who—

(1) knowingly transports . . . any visual depiction, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct."

§ 2252(a) (emphasis added). The Court concluded that the "most natural grammatical reading" of § 2252 was that "knowingly" in the introductory clause "modifies only the surrounding verbs" such as "transports" and not the other elements of the criminalized conduct. 513 U.S. at 68. It reasoned that the knowledge requirement and other elements of § 2252 are "set forth in independent clauses separated by interruptive punctuation." Id.

-36-

The Court's statutory reading in X-Citement Video is instructive in considering § 2242(2). Like § 2252, the statute in that case, the statute at issue here contains a "knowingly" requirement in an introductory clause set apart by "interruptive punctuation" from the contested elements of the offense. See id. Section 2242 makes it a crime to "knowingly—(2) engage[] in a sexual act with another person if that person is—" incapable of consent. The requirement of "knowingly" is thus set apart by two sets of interruptive punctuation from the distinct element relating to the victim's incapacity. Thus, "knowingly" in § 2242(2) cannot be read to modify "physically incapable of declining participation in, or communicating unwillingness to engage in" a sexual act. § 2242(2). That is because in this statutory arrangement "knowingly" belongs to and modifies the words "engages" and "attempts."

While asserting that "knowingly" applies to the victim's incapacity in § 2242(2), the concurrence cites Justice Scalia's opinion for the Court in United States v. Williams, 553 U.S. 285 (2008), for his observation that "knowingly introduces the challenged provision itself." Id. at 294. The best answer to the concurrence comes from Justice Scalia himself. Williams was "not a case where grammar or structure enable[d] the challenged provision or some of its parts to be read apart from the 'knowingly' requirement." Id. at 294. In particular, there was no conditional "if" clause, as in § 2242(2) ("if that other person is . . . physically incapable of declining participation"), or as in this example from X-Citement Video: "Anyone who knowingly double-parks will be subject to a $200 fine if that conduct occurs during the 4:30-to-6:30 rush hour." 513 U.S. at 81 (Scalia, J., dissenting) (emphasis added).

Even though "knowingly" introduced the parking rule, Justice Scalia explained that "[i]t could not be clearer that the scienter requirement applies only to the double-parking, and not to the time of day." Id. at 82. The Court acknowledged that Justice Scalia's dissent favored the "most grammatical reading" of the statute (and presumably of the parking rule). Id. at 70 (opinion of the Court). Williams thus does

not win the day for Bruguier. That is because the grammar and structure of § 2242(2) do not make the victim's capacity subject to the "knowingly" requirement.

The language in § 2242(2) mirrors the contested language in X-Citement Video in a second respect. In both, the language in the principal paragraph refers to the criminal actor ("knowingly engages" and "knowingly transports"). The subsidiary clauses, by contrast, refer to the victim ("is incapable" and "use of a minor"). The natural reading of § 2242(2) is that the adverb "'knowingly' modifies only the surrounding verbs" of "engages" and "attempts," X-Citement Video, 513 U.S. at 68, but it does not apply to the separate subsections describing the victim's condition.

The Supreme Court's guidance leaves little question as to the most natural grammatical reading of § 2242(2), which is that "knowingly" does not extend to the conditional phrases regarding the victim's incapacitated status. The question before us, then, is whether we must reject the natural grammatical reading of § 2242(2) and add an element of the offense that is not indicated by the congressional text.

B.

The Supreme Court has identified several situations in which it is appropriate to depart from the most natural grammatical reading of a statute, but none are applicable here. Rather, the Court's guidance and "contextual" considerations, Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009), make clear that the reasons offered by the majority for inserting an additional extratextual requirement into § 2242(2) are neither applicable nor appropriate in this case.

In X-Citement Video, the Supreme Court departed from the grammatical reading of the statute based on three concerns. First, the Court noted that any reading which omitted a knowledge requirement would create the absurd result of rendering innocent parties (such as a new resident of an apartment who returns unopened mail

or a Federal Express courier who delivers a box containing film) criminally liable for the distribution of child pornography. 513 U.S. at 69–70. Second, the statute as written would have reached nonobscene, sexually explicit materials involving persons over the age of 17, which are protected by the First Amendment. Id. at 71–73. Neither concern exists with respect to § 2242(2).

The third rationale the Court acknowledged in X-Citement Video was that it had in other instances "interpret[ed] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." Id. at 70. In making this observation, however, the Court conspicuously noted that a presumption of adding a mens rea requirement does not apply where "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." Id. at 72 n.2. The Court therefore indicated that its conclusion would not apply to producers of child pornography because they are "more conveniently able to ascertain the age of performers," and "[i]t thus makes sense to impose the risk of error on producers." Id. at 76 n.5.

The Court's guidance counsels strongly in favor of adopting the plain grammatical reading in the case before us. That is because the reasons for declining to apply a presumption of scienter in cases of underage sex partners or underage performers are equally pertinent here. It "makes sense to impose the risk of error" on aggressors who engage in sexual acts with incapacitated victims because the perpetrator confronts the victim personally and may reasonably be required to ascertain that victim's capacity or incapacity. See id. at 72 n.2, 76 n.5. For this reason the Court has long recognized an exception from traditional mens rea requirements for "sex offenses, such as rape," in which the victim's status rather than the defendant's knowledge is determinative. Morissette v. United States, 342 U.S. 246, 251 n.8 (1952). Congress, through its statutory language, expressly adopted that policy choice in § 2242(2). There is no reason for this court to add an element of knowledge that is not present in the text.

-39-

The majority also misconstrues Flores-Figueroa by reading it to create a presumption that a mens rea requirement applies to all elements of a criminal offense. In that case, the Court "relied heavily" on its earlier decision in X-Citement Video. Ante at 6 n.3. Read together, the two cases instruct that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element," Flores-Figueroa, 556 U.S. at 652 (emphasis added), but will not do so in cases of sexual abuse when the perpetrator is "conveniently able to ascertain" the victim's status, X-Citement Video, 513 U.S. at 76 n.5. As Justice Alito predicted, the majority erroneously reads Flores-Figueroa to "adopt[] an overly rigid rule of statutory construction" in which "the mens rea of a federal criminal statute nearly always applies to every element of the offense." Flores-Figueroa, 556 U.S. at 659 (Alito, J., concurring). A more holistic review of the Court's guidance on the issue instead supports the plain grammatical reading of § 2242(2).

Flores-Figueroa provides yet another reason for skepticism about the majority's reasoning. In that case, the defendant had been charged with identity theft. The government argued that applying a mens rea requirement to all elements of the offense would create "difficulty in many circumstances of proving beyond a reasonable doubt that a defendant has the necessary knowledge." 556 U.S. at 655. Although the Court recognized that this argument had "great[] practical importance" it found it "[in]sufficient . . . to turn the tide in the Government's favor" in that particular context because in identity theft cases "intent is generally not difficult to prove," and "concerns about practical enforceability [were] insufficient to outweigh the clarity of the text." Id. at 656. Unlike in cases of identity theft, almost all of the sexual assault cases which have been brought under § 2242(2) arise from abuse of alcohol or drugs in situations where intent may be difficult to establish. Concerns about practical enforceability therefore reinforce the natural grammatical reading of § 2242(2) that knowledge of incapacity is not an element of the offense.

-40-

The type of case now before us has not allowed the government easily to convict defendants. In the past ten years, the district courts in our circuit have conducted twenty nine trials in which defendants were charged under § 2242(2) and the jury instructed that the "knowingly" requirement applied only to the defendant's engagement in the sexual act and not to the victim's incapacity. Nevertheless, nearly half of the defendants were acquitted of the charges under § 2242(2) (thirteen out of twenty nine).

The concurring opinion also attempts to deflect from the natural grammatical reading of § 2242(2) by suggesting it is an outlier among sexual abuse statutes, asserting that no state's law in this circuit with the possible exception of Iowa Code § 709.1(2) imposes what the concurrence calls "strict liability." Ante, at 30-31 & n.14. The concurrence's own survey demonstrates however that the majority's addition of an actual knowledge element into § 2242(2) creates the more problematic anomaly. The states in this circuit as well as the Uniform Code of Military Justice impose liability if a sexual aggressor reasonably should have known that the victim was incapacitated, even if the prosecution cannot prove actual knowledge. See 10 U.S.C. § 920(b)(b)(3); Ark. Code. § 5-14-102(e); Minn. Stat. § 609.345, subd. 1(d); Mo. Rev. Stat. § 556.061(5)(b); Neb. Rev. Stat. § 28-319(1)(b); N.D. Cent. Code § 12.1-20-03(1)(c), (e); State v. Jones, 804 N.W.2d 409, 414 (S.D. 2011). That several jurisdictions have adopted a middle ground position requiring proof of constructive knowledge lends no support to the majority's effort to read a heightened actual knowledge requirement into the congressional language of § 2242(2), with the result that a defendant may be acquitted even when there is proof beyond a reasonable doubt that he reasonably should have known that the victim was incapacitated. No one contends that Congress occupied the middle ground in § 2242(2). As between the two interpretations advanced by the parties, the better view is that Congress opted to place the risk of error about incapacity on the sexual aggressor.

-41-

In sum, the correct and most natural grammatical reading of § 2242(2) does not apply any knowledge requirement to the victim's incapacity, and the Supreme Court's guidance as to when a mens rea requirement must be inserted into a statute's text makes clear that § 2242(2) is not such a statute. See Flores-Figueroa, 556 U.S. at 652–58; X-Citement Video, 513 U.S. at 70–76.

III.

The legislative history also shows that the "knowingly" requirement in § 2242(2) was not intended to apply to the defendant's awareness of the victim's incapacity. Flores-Figueroa makes clear that the "context" and the "background circumstances" of a governing statute must be studied in interpreting it. 556 U.S. at 652.

A.

Section 2242 was passed into law as part of the Sexual Abuse Act of 1986, which also enacted §§ 2241, 2243, 2244, and 2245. The majority places significant weight on an intratextual comparison of three of those statutes. Such a method, however, is only appropriate when "Congress included particular language in one section of a statute but omits it in another section of the same Act." Rodriguez v. United States, 480 U.S. 522, 525 (1987) (per curiam) (citation omitted). Statutory rape, which is the crime defined in §§ 2241(c) and 2243(a), has long been recognized in our country as not requiring any proof of scienter with respect to the victim's age. See United States v. Ransom, 942 F.2d 775, 776–78 (10th Cir. 1991). Nothing in the legislative record suggests that Congress ever contemplated that its new statutory rape statutes, §§ 2241(c) and 2243(a), would contain any different mens rea requirement.

By contrast, the legislative record of § 2242(2) shows that Congress at one point did contemplate imposing a mens rea requirement on the perpetrator with

-42-

respect to the victim's incapacity. It later modified the statute to make it a strict liability crime, however. As initially proposed in the 98th Congress, § 2242 contained language which would have criminalized

> knowingly engag[ing] in a sexual act with another person if such other person is known by the offender to be—
>
> > (1) incapable of appraising the nature of the conduct; or
> >
> > (2) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act[.]

Sexual Assault Act of 1984, H.R. 4876, 98th Cong. § 2 (1984) (emphasis added).

Revisions were then made to the text of § 2242 before it was presented to the 99th Congress two years later. In particular, it was decided that the phrase "known by the offender to be" should be deleted. See Sexual Abuse Act of 1986, H.R. 4745, 99th Cong. § 2 (1986). The 99th Congress passed the revised bill, and the final version of § 2242 omitted any reference to the defendant's knowledge of the victim's incapacity. Congress's decision to omit the initially suggested knowledge requirement is strong evidence that § 2242 was intended to focus on whether the victim was actually incapacitated rather than the defendant's perception. See Doe v. Chao, 540 U.S. 614, 623 (2004). Such a focus appropriately placed responsibility on the perpetrator to ascertain the victim's capacity to consent.

Although the Supreme Court has said that the deletion of terms from a bill "is fairly seen" as a "deliberate elimination" of the original proposition, id., the concurring opinion finds the revisions meaningless here. In support it cites drafting conventions that merely refer a reader back to the "language" of the statute (which includes grammar and structure), and even the absence of punctuation in ambiguous hearing testimony from a Justice Department official. Ante, at 26, 28 & n.11. But the concurrence has no answer for the stark change in the testimony of the principal

-43-

sponsor of the original bill between 1984 and 1986. In 1984, when the bill included the phrase "known by the offender to be," Representative Hoyer explained that "[s]exual assault involves engaging in a sexual act <u>with persons known by the offender to be incapable of</u> appraising the nature of such conduct." <u>Federal Rape Law Reform: Hearings Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary</u>, 98th Cong. 80 (1984) (emphasis added).

In 1986, after "known by the offender" was stricken from the bill, Representative Hoyer explained the meaning quite differently as having no knowledge requirement for incapacity: "Sexual abuse involves engaging in a sexual act <u>with persons incapable of</u> appraising the nature of such conduct and those who are physically incapable of declining participation in or communicating unwillingness to engage in the sexual act." <u>Sexual Abuse Act of 1986: Hearing Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary</u>, 99th Cong. 15 (1986) (emphasis added). If the concurrence were right that "format, conventions, and techniques" meant that the drafting change had no substantive effect, then there would have been no reason for Representative Hoyer to alter his statement between 1984 and 1986. That in 1986 he omitted the phrase "known by the offender to be" is telling evidence that the principal sponsor of the legislation understood that § 2242(2) as enacted placed the risk of error about a victim's incapacity on the sexual aggressor.

Moreover, although the majority emphasizes the similarities between §§ 2241(c), 2242(2), and 2243(a), <u>see</u> <u>ante</u> at 8, the statutes as enacted differ in ways critical to our analysis. In § 2241(c), the "knowingly" element would apply to the age of the victim as a grammatical matter since no independent clauses or interruptive punctuation marks indicate otherwise. It was therefore necessary for Congress to add § 2241(d) to eliminate a "knowingly" element otherwise prescribed by the text. Similarly in § 2243, Congress added in subsection (c) an affirmative defense concerning the defendant's knowledge, creating ambiguity as to the mens rea required

-44-

by § 2243(a). It is thus logical that Congress added § 2243(d) to clarify the state of mind proof requirement in subsection (a). In § 2242, by comparison, Congress had no reason to add a new subsection because the text and grammar of § 2242(2) already make clear that the knowledge requirement does not apply to a victim's incapacity.

The divergent drafting histories and differing structures of §§ 2241(c), 2242(2), and 2243(a) significantly limit the utility of the majority's intratextual analysis. In such circumstances the majority's assumption that the statutes should be read strictly in parallel results in a reading that is "too clever by half— . . . conjuring up patterns that were not specifically intended and that are upon deep reflection not truly sound." Akhil Reed Amar, Intratextualism, 112 Harv. L. Rev. 747, 799 (1999).

B.

The majority's reading of § 2242(2) is equally inconsistent with the policies identified in the principal legislative report concerning the Sexual Abuse Act of 1986. See generally Samantar v. Yousuf, 130 S. Ct. 2278, 2287 n.9 (2010). An apparent congressional purpose in enacting that legislation was to "modernize and reform Federal rape statutes," H.R. Rep. No. 99-594, at 6 (1986), and to "bring[] [them] into line with modern perceptions of woman's place in our society," id. at 13. Critics thought existing rape law improperly focused on the victim's characteristics rather than the assailant's actions, and proponents of the 1986 Act accordingly moved away from a victim focus and instead placed "the focus of a trial . . . upon the conduct of the defendant." Id. at 11.

The congressional hearing record in connection with the enactment of § 2242 shows that legislators were informed of the need to deter and punish serious sexual offenses on Indian reservations. See Sexual Abuse Act of 1986: Hearing Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary, 99th Cong. 47–49 (1986) (statement of the Ass'n on Am. Indian Affairs, Inc.). The Department of

Justice has observed that one in three American Indian women has been raped or experienced an attempted rape, nearly twice the national average. Patricia Tjaden & Nancy Thoennes, Full Report of the Prevalence, Incidence, and Consequences of Violence Against Women, at 22 (2000), available at http://www.ncjrs.gov/pdffiles1/nij/183781.pdf; see also United States v. Deegan, 605 F.3d 625, 663 (8th Cir. 2010) (Bright, J., dissenting). A review of our caseload shows that sexual assault in the specific circumstances described in § 2242(2) remains a significant problem on Indian reservations. During the past ten years, more than 100 individuals have been convicted of or pled guilty to violating § 2242(2) in the district courts of the Eighth Circuit, and we have considered appeals from at least fourteen such defendants.[18] While most of the victims are women, men have not been exempt from such sexual assaults. See, e.g., Betone, 636 F.3d at 386–87.

Of course not all § 2242(2) offenses occur on Indian reservations. United States v. Warren, 700 F.3d 528 (D.C. Cir. 2012), for example, involved a CIA official stationed in Algeria charged under § 2242(2) for sexually assaulting a married Muslim woman. Id. at 529–30. The victim had delayed reporting the incident "[d]ue to her religion and Algerian culture," but she subsequently informed another U.S. official that the defendant had "served her adulterated alcoholic drinks that caused her to pass in and out of consciousness" and then "moved her to his bed, removed all of her clothing and had sexual contact" with her. Id. at 530. A subsequent investigation revealed that the defendant had previously drugged and sexually abused another

---

[18]United States v. Chasing Hawk, No. 12-1193 (8th Cir. submitted Oct. 19, 2012); United States v. Villarreal, 707 F.3d 942 (8th Cir. 2013); United States v. Bruguier, 703 F.3d 393 (8th Cir. 2012); United States v. Rouillard, 701 F.3d 861 (8th Cir. 2012); United States v. Demery, 674 F.3d 776 (8th Cir. 2011); United States v. Betone, 636 F.3d 384 (8th Cir. 2011); United States v. Knox, 634 F.3d 461 (8th Cir. 2011); United States v. Hawkman, 363 F. App'x 417 (8th Cir. 2010) (unpublished per curiam); United States v. Papakee, 573 F.3d 569 (8th Cir. 2009); United States v. Wilcox, 487 F.3d 1163 (8th Cir. 2007); United States v. Thundershield, 474 F.3d 503 (8th Cir. 2007).

Algerian Muslim woman, and a search of his home revealed child pornography, Valium, and Xanax. Id. Other sites of sexual assaults charged under § 2242(2) include military vessels, United States v. Williams, 89 F.3d 165, 166 (4th Cir. 1996), and the special aircraft jurisdiction of the United States, United States v. Jahagirdar, 466 F.3d 149, 150–51 (1st Cir. 2006).

In this case the evidence shows that after Bruguier raped Crystal, she was found knocked onto the floor, "not moving or speaking" with her eyes closed; when they opened, they were "glossy red." Ante at 3. The congressional record related to § 2242(2) includes the purposes to "modernize" rape law to keep with changing views about a "woman's place in our society," H.R. Rep. No. 99-594, at 6, 13, and to focus rape law upon the conduct of the aggressor, id. at 11. The majority's opinion instead removes the responsibility from a sexual actor to confirm that the other party is not "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in" the sexual act. 18 U.S.C. § 2242(2).

IV.

Reading a knowledge requirement into § 2242(2) with respect to the victim's incapacity drastically departs from a longstanding assumption in our case law applying the statute. We have previously considered at least fourteen appeals from defendants convicted of violating § 2242(2), see supra at 46 n.18, and have always applied the knowledge requirement only to the rapist's awareness of his sexual act until United States v. Rouillard, 701 F.3d 861 (8th Cir. 2012).

The anomalous nature of the Rouillard decision is evidenced by an opinion filed only two months later. United States v. Villarreal, 707 F.3d 942 (8th Cir. 2013), affirmed a conviction for sexual abuse under § 2242(2) after concluding that the evidence was sufficient to support a finding of guilt on each element of the offense.

-47-

Id. at 958–61. The court recited that "to convict Villarreal of sexual abuse" under § 2242(2), the government was required to prove that

> (1) . . . Villarreal knowingly engaged in a or attempted to engage in a sexual act with [the victim]; (2) <u>at the time of the offense, [the victim] was incapable of appraising the nature of the conduct or was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act</u>; (3) Villarreal is an Indian person; and (4) the offense took place in Indian country.

Id. at 959 (emphasis added); see also United States v. Smith, 606 F.3d 1270, 1281 (10th Cir. 2010). The knowledge requirement was linked to engaging in the sexual act itself, not to the incapacity of the victim. As the court observed, our cases "have held that performing a sexual act upon a person who is sleeping meets the requirements of § 2242(2)(B)." Villarreal, 707 F.3d at 959 (quoting United States v. Lowry, 595 F.3d 863, 866 (8th Cir. 2010)).

The instruction given in Villarreal was consistent with instructions given in numerous cases over the years. For example, in United States v. Betone, we affirmed a conviction under § 2242(2) after concluding that the victim's testimony that the defendant "began fellating him while he was asleep . . . alone establish[ed] the elements" of the offense. 636 F.3d at 387. We have similarly concluded that a reasonable jury could find "that a person who is asleep when a sexual act begins is physically unable to decline participation in that act," and such evidence is thus sufficient to convict the assailant under § 2242(2). Wilcox, 487 F.3d at 1169. Similarly, evidence that the victim "had drunk eight beers," "smoked a marijuana cigarette," and "was very tired" was viewed as sufficient for "a rational jury [to find] beyond a reasonable doubt that the victim was physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act." United States v. Barrett, 937 F.2d 1346, 1348 (8th Cir. 1991).

During the past ten years, the district courts of the Eighth Circuit have conducted thirty two trials in which defendants were charged with violating § 2242(2). In twenty nine of those trials, the jury instructions put the knowledge requirement on the perpetrator's awareness of the physical sexual act, and not knowledge of the victim's incapacity. While the issue may not have been joined in all of these cases, it is noteworthy that the courts have applied the natural grammatical reading of § 2242(2). The majority claims it would be "novel" for this accepted understanding of § 2242(2) to inform our analysis, ante, at 13, but the Supreme Court long has given "much weight" to decisions in which contested legal points "neither occurred to the bar or the bench," United States v. Ross, 456 U.S. 798, 819 (1982) (quoting Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 88 (1809) (Marshall, C.J.)), since this absence of argument "illuminates the profession's understanding" of the law, id.

After carefully reviewing the conflicting arguments presented to it about the proper interpretation of § 2242(2), the district court gave our circuit's standard instruction. I respectfully suggest that the majority's departure from that standard instruction is unsupported by the statutory text or by the statute's "background circumstances." Flores-Figueroa, 556 U.S. at 652. Rather, a close examination of the statutory text and of the congressional concerns leading to its enactment reinforce the correctness of both the district court's jury instruction and our longstanding understanding that § 2242(2) does not require the government to prove that the defendant knew that his victim was incapacitated, but only that the victim was in fact incapacitated, placing the responsibility where it naturally belongs. For all these reasons I dissent.

———————————————————